United States Court of Appeals,

Fifth Circuit.

No. 93-3565.

Jeanne M. KELLY, Individually and as personal representative of the estate of Captain James J. Kelly, and on behalf of her minor child, James Joseph Kelly, III, Plaintiff-Appellee, Cross-Appellant,

v.

The PANAMA CANAL COMMISSION, Defendant-Appellant, Cross-Appellee.

July 25, 1994.

Appeals from the United States District Court for the Eastern District of Louisiana.

Before POLITZ, Chief Judge, DAVIS and WIENER, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

The Panama Canal Commission ("Commission") appeals from a judgment rendered against it by the district court in the wrongful death action brought by the widow and child of Captain James Kelly. Jeanne Kelly and her minor son cross-appeal to seek an increase in the award.

I.

Captain James Kelly, a U.S. Army Officer assigned to Fort Kobbe in the Republic of Panama, was killed when the mast of the catamaran he was sailing struck hanging electrical wires. Captain Kelly and a friend, Master Sergeant Timothy Masterson, were off-duty for the week-end. They obtained the catamaran from the Rodman-Marina Sailing Club, which is a civilian-run club located on the Rodman Naval Station, for a recreational trip.

The Panama Canal Commission's Power Branch is responsible for

1

electricity in the Canal area. The Commission is an agency of the United States.

Pursuant to 22 U.S.C. § 3772, Jeanne Kelly, Captain Kelly's widow, ("Kelly") filed suit seeking damages for herself and her minor son for Captain Kelly's wrongful death. The district court concluded that Kelly's claims were not barred by the Feres doctrine and that the Commission was negligent in the location of its electrical lines. Based on Kelly's damage evidence, the court fixed the award at: 1) $10,000 for Captain Kelly's pain and suffering; 2) $150,000 to Jeanne Kelly for loss of society and $170,000 to the minor son for loss of society; and 3) $578,847 to each for loss of support. The court also assessed sanctions against the Commission in the amount of $2,150 for intimidation of a witness.

## II.

### A.

The Commission argues that the Feres doctrine should be applied under the Panama Canal Act of 1979 to bar Kelly's claim. Under the Feres doctrine, "the Government is not liable ... for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Feres v. United States,* 340 U.S. 135, 146, 71 S.Ct. 153, 159, 95 L.Ed. 152 (1950). The Court has enunciated three rationales for the doctrine: 1) the distinctively federal nature of the relationship between the government and members of its armed forces, which argues against subjecting the government to liability based on the fortuity of the

2

situs; 2) the availability of alternative compensation systems; and 3) the fear of damaging the military disciplinary structure. See *Stencel Aero Eng. Corp. v. United States,* 431 U.S. 666, 671-72, 97 S.Ct. 2054, 2057-58, 52 L.Ed.2d 665 (1977). The government bears the burden of proving that Captain Kelly's death arose out of an "activity incident to service."

The Fifth Circuit considers three factors in determining the applicability of *Feres:* 1) duty status, 2) where the injury occurred, and 3) the activity being performed. *Parker v. United States,* 611 F.2d 1007 (5th Cir.1980). After applying these three factors, we consider the totality of the circumstances to determine whether the serviceman was acting "incident to service." *Id.* at 1013.

The duty status of service personnel falls along a spectrum. Military personnel with only an unexercised right to a pass or those who are only off duty for the day usually are held to be acting "incident to service." *Parker* at 1013. See also, *Warner v. United States,* 720 F.2d 837 (5th Cir.1983) (*Feres* bars claims of an enlisted man who was given day off and was on personal business on the base at time of injury). The Feres doctrine does not generally bar claims of a serviceperson who is on furlough. *Harvey v. United States,* 884 F.2d 857 (5th Cir.1989) (medical hold pending discharge). Captain Kelly worked Monday to Friday. The accident occurred when he was off-duty for the week-end. Therefore, his duty status falls along the middle of the spectrum and is not a strong indicator of whether he was acting incident to service. *See*

3

*Elliott By and Through Elliott v. United States,* 13 F.3d 1555 (11th Cir.1994) (where serviceman on leave for two weeks and accident occurred two days before he was due back, duty status supports allowing liability).

Next, we look at where the injury occurred to determine if the location indicates that the activity is service-oriented. *Parker,* 611 F.2d at 1014. While there is no bright-line rule, *Feres* is more likely to bar recovery when military personnel are injured on base. Here, Captain Kelly was injured off base, while sailing in the Canal.

Third, we examine the activity being performed at the time of the injury to see if it served some military function. *Parker,* 611 F.2d at 1014. The Commission argues that we should follow the Ninth Circuit's decision applying the *Feres* bar in a case in which a service member was injured when her canoe was struck by a motor boat near the Navy facility. *Bon v. United States,* 802 F.2d 1092 (9th Cir.1986). Bon had rented the canoe from the Navy's Special Services Center and could only rent it by virtue of her status as a member of the military. Bon was subject to military discipline for violation of the Special Service rules governing the use of the facility and its equipment. In addition, the Special Services Center itself was directly under control of the commanding officer of the San Diego Naval Training Center. The Ninth Circuit found the presence of direct military control over the activity sufficient to establish that the activity was incident to service. *Id.* at 1096.

4

This case is distinguishable from *Bon*. Here, the Commission has not shown that Kelly was directly subject to military control. Rather, Kelly was engaged in the purely recreational activity of sailing a catamaran rented from a civilian-run marina. Unlike the serviceperson in Bon, Kelly was sailing a privately owned catamaran, and no special military rules or regulations applied to govern the conditions of his sailing.[1] See also, *Elliott,* 13 F.3d at 1563 (*Feres* does not bar claim of serviceman and his wife for injuries that occurred due to faulty venting system in a military-owned apartment in which they resided); *Denham v. United States,* 646 F.Supp. 1021 (W.D.Tex.1986); *aff'd.,* 834 F.2d 518 (5th Cir.1987) (*Feres* does not bar claims of serviceman who was off-duty for the day and was injured in a diving accident due to Army Corps of Engineers' negligent maintenance of swimming area).

Moreover, this is not a situation in which military judgment or military discipline is called into question. In a recent discussion of *Feres,* the Supreme Court emphasized that one important consideration in determining whether Feres bars a suit is "whether the suit requires the civilian court to second-guess military decisions." *United States v. Shearer,* 473 U.S. 52, 57,

---

[1]The Commission claims that the Panama Canal Treaty and the fact that Kelly had a sailing license issued by the Navy Rodman Marina demonstrate military control. However, while the Panama Canal Treaty applies to navigation, it applies equally to military and civilian personnel. There is also no evidence that Kelly needed the sailing qualification card in order to rent the catamaran, nor is there evidence that only military personnel qualified for such a license. Under these circumstances, the Commission has failed to demonstrate military control sufficient to invoke the *Feres* bar.

5

105 S.Ct. 3039, 3043, 87 L.Ed.2d 38 (1985).

In *Shearer,* the family member of a serviceman murdered by another serviceman sued alleging that the military was negligent in failing to warn about the murderer's past record of violence. The Court held that this claim was barred by *Feres* because "it calls into question basic choices about discipline, supervision, and control of a serviceman." *Id.* at 58, 105 S.Ct. at 3043. Kelly's claim, on the other hand, does not. Captain Kelly was off-duty, off-base and engaged in a purely leisure activity that served no military purpose or function. Unlike the situation in *Shearer,* Kelly's suit does not affect military discipline or involve military judgment. Instead, the suit involves the Panama Canal Commission's negligence in hanging electrical wires in the path of recreational sailors.

The district court did not err in concluding that the Panama Canal Commission failed to meet its burden of showing that Captain Kelly's recreational sailing trip was "an activity incident to service." The district court correctly refused to apply *Feres* to bar Kelly's claim.

B.

Kelly sued under 22 U.S.C. § 3772, which allows recovery of damages for injuries occurring in areas outside the locks of the Panama Canal when:

> the injury was proximately caused by the negligence or fault on the part of an officer of employee of the United States acting in the scope of his employment and in the line of his duties in connection with the operation of the Canal.

Under § 3776, courts are to apply "the principles of law and rules

6

of practice obtaining generally in like cases between a private party and ... the United States."  However, the Panama Canal Act provides no standard for determining negligence or damages for personal injury.

The district court found the situation analogous to that of the Longshoremen's and Harbor Workers' Compensation Act (LHWCA) and applied the remedy provisions of that act.  However, § 5(b) of the LHWCA was adopted in 1972 to provide a unique remedy for injury or death of longshoremen.  Grant Gilmore & Charles L. Black, Jr., The Law of Admiralty, 499ff (2d ed. 1975).  It was specially designed to provide a narrow tort remedy to the longshoreman in addition to a compensation remedy against his employer.  In contrast to this narrow statutory tort remedy afforded by the LHWCA, the general maritime law governs virtually all non-statutory tort actions occurring on navigable waters.  We are persuaded, therefore, that the general maritime law is the best source for analogous law to apply in this case.

Under the general maritime law, non-pecuniary damages are not available to seamen.  The Supreme Court has held that in all actions for wrongful death of a seaman, whether pursuant to the Jones Act, the Death on the High Seas Act, or general maritime law, recovery is limited to pecuniary damages.  *Miles v. Apex Marine Corp.,* 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990).  This circuit recently extended the rule to the injury of a non-seaman. We held that non-pecuniary losses are not recoverable by an injured non-seaman unless he is a longshoreman injured in state territorial

7

waters. *Nichols v. PHI,* 17 F.3d 119 (5th Cir.1994) (wife of longshoreman injured in nonterritorial waters not entitled to loss of consortium claim). Because Captain Kelly was a non-seaman and was not a longshoreman killed in territorial waters, *Nichols* requires us to conclude that Kelly is not entitled to recover non-pecuniary damages.

C.

Both parties dispute the district court's computation of loss of support. Kelly cross-appeals on damages, arguing that the district court erred in using Kelly's earnings as a captain as the basis for its loss of support award. The Commission argues that the district court erred in computing future earnings based on a retirement age of 60.

Kelly argues that the district court erred in refusing to compute Captain Kelly's earnings based on his promotion to major. The court found that there was insufficient evidence to prove that Captain Kelly had been promoted at the time of his death. The district court's factual determination is subject to the clearly erroneous standard. *Griffin v. Box,* 910 F.2d 255 (5th Cir.1990).

Kelly argues that all of the evidence available demonstrates that Captain Kelly had been promoted to major but had not been appointed as such. Masterson testified that Captain Kelly had been selected for promotion. Kelly also points to the letter sent by Lieutenant Murray to the chairman of the Board of Local Inspectors in which Murray referred to Kelly as "major." However, the district court found that all other references to Kelly made by

8

Army personnel in conjunction with his death state his rank as that of captain.

The district court did not err in declining to compute Captain Kelly's earnings on the basis of a major's pay. The evidence does not show that Captain Kelly was promoted prior to his death, and posthumous promotions do not provide a basis for an increase in pay.[2]

Next, the Commission argues that as either a captain or a major, Kelly could not have remained in the military until he was sixty. The Commission points out that even if Captain Kelly was not mandatorily discharged for failure to achieve a promotion, and even if he had secured a term of years as a lieutenant colonel, he still would have been mandatorily retired after twenty-eight years of service at age forty-nine.[3]

The district court has broad discretion to determine the award of future earnings. *Johnson v. Sawyer,* 980 F.2d 1490, 1504 (5th Cir.1992). But the award must be supported by record evidence and the findings must be sufficiently detailed to permit us to review the award.

It is clear to us that Kelly could not have remained in the Army as a captain until age sixty. If the district court concluded

---

[2]Captain Kelly was posthumously commissioned as a major. However, 10 U.S.C. § 1523 provides that "no person is entitled to any bonus, gratuity, pay, or allowance because of a posthumous commission or warrant."

[3]Under 10 U.S.C. § 632, an officer is subject to discharge if he is not selected for promotion to the next higher grade on two occasions. Only an officer who achieves the rank of lieutenant colonel is entitled to serve a term of years.

that Kelly would remain in the military until age sixty, the court should have used earnings based on his probable rank during the likely progression of his military career. If the district court concluded that Captain Kelly would have likely departed the military before age sixty, his earnings as a military officer could not be used as a wage base for loss of support after his departure. Our review of the record disclosed no reference to a planned post military career nor evidence of earnings from such a career. On remand, the district court should make additional findings to specify the wage base it used to compute the loss of support item and, if necessary, conform the award to the evidence. If the district court determines that some justification exists to reopen the record to take additional evidence on damages, we leave this to the court's sound discretion.

D.

The Commission argues that the court erred in imposing and failing to withdraw its sanctions against the Commission's attorney for intimidating a witness. Alexander Livingston, a lieutenant in the fire department of the Panama Canal Commission, was called to testify for Kelly. In a pre-trial interview with Lt. Livingston, Mr. Lindberg, one of the Commission's attorneys, threatened Lt. Livingston with criminal sanctions if he testified. Lindberg warned Lt. Livingston that "there may be circumstances under which your testimony might be considered at a later time to be in violation of 18 U.S.C. § 203 and § 205, which both carry criminal sanctions of course, and it is in fact the intention of the agency

10

to pursue those sanctions."  The witness stated that he felt intimidated and asked if he could be excused from testifying.

These two code sections address compensation to government officials and activities of government officials.  Both sections exclude from punishment or sanction the giving of testimony under oath.  § 203(f) expressly provides that:

> Nothing in this section prevents an individual from giving testimony under oath or from making statements required to be made under penalty of perjury.

§ 205(g) is similar;  it differs only in the last phrase which is "under penalty for perjury or contempt."

The court did not abuse its discretion in assessing sanctions against the Commission's attorney.  An attorney who intimidates a witness commits a serious infraction, and the district court's sanctions were entirely appropriate.

### III.

The district court did not err in rejecting the Commission's Feres doctrine defense and in finding the Commission liable to Kelly for Captain Kelly's death.  We find no error in the district court's award of sanctions against the Commission's attorney.  However, we vacate the damages award and remand with instructions to delete the award of non-pecuniary damages.  On remand the court should make more detailed findings on the future earnings element of the award and if necessary amend the award to conform to the evidence.  We leave it to the district court to decide whether a supplemental hearing is necessary.  The judgment of the court is therefore

11

AFFIRMED in part, VACATED in part AND REMANDED for further proceedings consistent with this opinion.