**Julius PRINGLE, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. Civ.A. 98–1085–MLB.**

United States District Court,
D. Kansas.

April 8, 1999.

Paul F Elkin, U.S. Department of Justice, Civil Division, James F. McConnon, Special Attorney, U.S. Department of Justice, Torts Branch, Civil Division, Washington, DC, for defendant.

Steven L. Hornbaker, Harper, Hornbaker, Altenhofen & Opat, Junction City, KS, for plaintiff.

### *MEMORANDUM AND ORDER*

BELOT, District Judge.

This matter is before the court pursuant to the government's motion to dismiss

(Doc. 6) for lack of subject matter jurisdiction plaintiff's suit under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671–80. The government argues the suit is barred by sovereign immunity pursuant to the *Feres*[1] doctrine. In determining whether there is subject matter jurisdiction, the court considers all relevant documents including the government's motion and supporting memorandum (Doc. 6), plaintiff's response (Doc. 12 and 15), the government's reply (Doc. 19) and the parties' supplemental briefs (Doc. 29, 30 and 31).

There are some preliminary matters that need to be addressed in this case. First, plaintiff filed a motion for oral argument (Doc. 13) in relation to the government's motion. Requests for oral argument are granted only at the discretion of the court. *See* D.Kan.Rule 7.2. Oral argument on the motion would not aid the court in its disposition of the matter; thus, the motion is denied. Second, plaintiff also filed a motion (Doc. 14) requesting additional time to complete discovery on matters material to the court's jurisdiction. However, the motion was abandoned in a March 31, 1999 telephone conference call with the parties' attorneys.

Finally, a potential procedural error created by the court's February 12, 1999 memorandum and order (Doc. 28) must be corrected. In that order, the court informed the parties that the government's motion would be treated as a Rule 56 motion for summary judgment because both jurisdictional and merits issued were intertwined in determining whether the government's actions were excepted from the FTCA's waiver of sovereign immunity. Upon further review of the issue, however, the court concludes conversion would be improper.

Jurisdictional and merits issues are considered intertwined "[w]hen subject matter jurisdiction is dependent upon the same statute which provides the substantive claim in the case." *Wheeler v. Hurdman,* 825 F.2d 257, 259 (10th Cir.1987). In *Bell v. United States,* 127 F.3d 1226 (10th Cir. 1997), and *Redmon v. United States,* 934 F.2d 1151 (10th Cir.1991), the authority relied upon in the previous order, subject matter jurisdiction depended upon the discretionary function exception to the FTCA which is codified at 28 U.S.C. § 2680(a). In this matter, jurisdiction depends upon the *Feres* doctrine, a *judicially created* exception to the FTCA's waiver of sovereign immunity. Therefore, it would be improper for the court to treat the government's motion as one for summary judgment because jurisdiction is not dependent upon the FTCA; it is dependent upon whether *Feres* applies. *See, e.g., Holt v. United States,* 46 F.3d 1000, 1003 (10th Cir.1995) (stating conversion was improper because resolution of the jurisdictional issue did not depend on the FTCA); *Atkinson v. United States,* 825 F.2d 202, 204 n. 2 (9th Cir.1987) (recognizing proper disposition when *Feres* applies is to dismiss for lack of subject matter jurisdiction, not grant summary judgment). For this reason, the court disposes of the government's motion as one under Rule 12(b)(1).

## I. *FACTS*

This action involves a claim for damages against the government for injuries plaintiff received at the Troopers Club (the "club") located on Fort Riley Military Reservation ("Fort Riley"). At all relevant times, plaintiff was a Private First Class on active duty in the United States Army and stationed at Fort Riley. (Doc. 6, Ex. B, line 22); *see also* 10 U.S.C. § 101(d)(1) ("active duty means full-time duty in the active military service of the United States"). The club is a nonappropriated fund instrumentality established and maintained "solely" under the Army's Morale,

---

1. *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950) (FTCA's waiver of sovereign immunity did not encompass suits brought by service members for injuries sustained incident to their military service). Plaintiff's suggestion that *Feres* be overruled is deemed preserved for appellate review. (Doc. 15 at 13).

Welfare, and Recreation ("MWR") System. *See* Army Regulations ("AR") 215–1 at §§ 1–1 and 1–4. The club is categorized as a "Business Activity" under Army regulations and is "considered less essential from the perspective of the military mission, but still highly desirable as a means of providing recreational activity, with the attendant morale benefit." AR 215–1 at § 2–12.

Plaintiff alleges he was in the club on September 17, 1995 when he had "words" with members of a Junction City, Kansas gang. Apparently, civilians are permitted to patronize the club without any limitations. (Doc. 1 at ¶ 7). Club employees intervened in the fray, and at some point following, ejected plaintiff from the club into the club parking lot among gang members with whom he previously had words. Thereafter, he claims the group beat and kicked him causing permanent brain damage and other physical injuries.

Following his injuries, plaintiff received many months of treatment at military medical facilities but was unable to fully recover from his injuries. (Doc. 6, Ex. E, "Medical Evaluation Board" report). On January 26, 1998 an Army Physical Evaluation Board determined he was 40% permanently disabled and recommended permanent retirement. (Doc. 6, Ex. F, "Physical Evaluation Board (PEB) Proceedings"). Plaintiff concurred with the board's finding, *see id.*, and was relieved from active duty on March 11, 1998 with military retirement pay based on a 40% disability, doc. 6, Ex. G.

Plaintiff claims club employees negligently ejected him from the club and failed to provide him adequate safety. In addition, he maintains the club had a reputation for violence, and the government failed to take protective measures to ensure the safety of club patrons from violent incidents such as those that occurred to him. Consequently, he seeks monetary damages pursuant to the FTCA for the alleged breach of this duty. As required by 28 U.S.C. § 2675(a), plaintiff filed a notice of his claim with the Department of the Army which was denied. Following the denial, plaintiff filed this suit seeking to invoke the court's jurisdiction under the jurisdictional component of the FTCA, 28 U.S.C. § 1346(b).

## II. *SUBJECT MATTER JURISDICTION*

Federal courts are courts of limited jurisdiction empowered by the Constitution only to hear cases authorized under a jurisdictional grant by Congress. *See Henry v. Office of Thrift Supervision*, 43 F.3d 507, 511 (10th Cir.1994). Congress's power to confer or withhold federal court jurisdiction is plenary. *See id.* "The party seeking to invoke the jurisdiction of a federal court must prove that the case is within the court's subject matter jurisdiction." *Id.* at 512. When the court's jurisdiction is challenged, the plaintiff bears the burden of showing a basis for the court's subject matter jurisdiction. *See Whayne v. City of Topeka*, 959 F.Supp. 1370, 1371 (D.Kan.1997).

In general, Rule 12(b)(1) motions take two forms: 1) a facial attack on the sufficiency of subject matter jurisdiction allegations contained in the complaint; and 2) a challenge to the facts upon which subject matter jurisdiction depends. *See Holt v. United States*, 46 F.3d at 1002–03. The current motion falls within the second category because the government claims the facts surrounding plaintiff's FTCA suit implicate the *Feres* doctrine which, if applicable, bars federal court jurisdiction on the basis of sovereign immunity.

In a factual attack on subject matter jurisdiction, "a district court may not presume the truthfulness of the complaint's factual allegations ... and has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id.* at 1003. Doing so does not require the court to convert the motion to a Rule 56 motion for summary judgment. *See id.* When, as in this case, a court resolves a motion to dismiss for lack

of subject matter jurisdiction without an evidentiary hearing, the plaintiff is only required to make a prima facie showing of subject matter jurisdiction. *See Federal Deposit Ins. Corp. v. Oaklawn Apartments,* 959 F.2d 170, 174 (10th Cir.1992). However, to the extent that facts outside the complaint have been considered, all disputes have been resolved in favor of plaintiff.

### III. *DISCUSSION AND ANALYSIS*

In *Feres,* the Supreme Court held "that service members cannot bring tort suits against the Government for injuries that 'arise out of or are in the course of activity incident to service.'" *United States v. Johnson,* 481 U.S. 681, 686, 107 S.Ct. 2063, 2066, 95 L.Ed.2d 648 (1987) (quoting *Feres,* 340 U.S. at 146, 71 S.Ct. at 159). This judicially created exception to service members' FTCA suits is generally referred to as the *Feres* doctrine. *See Shaw v. United States,* 854 F.2d 360, 362 (10th Cir.1988). "[T]he *Feres* doctrine has been applied consistently to bar all suits on behalf of service members against the Government based upon service-related injuries." *Johnson,* 481 U.S. at 687, 107 S.Ct. at 2067. The issue involved in this case is whether plaintiff's injuries arose out of activity incident to his service. If so, the *Feres* doctrine applies, and the court is barred from exercising subject matter jurisdiction over plaintiff's FTCA suit.

### A. *"INCIDENT TO SERVICE" REVIEW*

The Supreme Court has never specifically defined the "incident to service" test.

Rather, the Court focuses on three underlying rationales which support the *Feres* doctrine to determine its applicability.[2] The first is that "[t]he relationship between the Government and members of its armed forces is 'distinctly federal in character.'" *Id.* at 689, 107 S.Ct. 2063 (quoting *Feres,* 340 U.S. at 143, 71 S.Ct. at 158) (brackets in original). The nature of military service involves performance in geographically diverse areas of the continent and world, and "[w]here a service member is injured ... because of his military relationship with the Government[,] it 'makes no sense to permit the fortuity of the situs of the alleged negligence to affect the liability of the Government to [the] serviceman.'" *Johnson,* 481 U.S. at 689, 107 S.Ct. at 2068.

The second rationale focuses on the availability of alternative military compensation systems for service-related injuries. *See id.* at 689–90, 107 S.Ct. at 2068–69. In particular, there are statutory disability and death benefits under which recovery is "swift" and "efficient" and normally requires no litigation. *See id.* at 690, 107 S.Ct. at 2068. As such, it is likely that Congress did not contemplate service members' recovery under the FTCA when such a comprehensive system of recovery is available for service-related injuries. *See id.* Finally, judicial involvement or interference in sensitive military affairs undermines military discipline and effectiveness.[3] *See id.* at 690, 107 S.Ct. at 2069.

Many courts have recognized the Supreme Court's expansion of the *Feres* doc-

---

**2.** In *United States v. Shearer,* the Court noted that "[t]he Feres doctrine cannot be reduced to a few bright-line rules; each case must be examined in light of the [FTCA] as it has been construed in *Feres* and subsequent cases." 473 U.S. 52, 57, 105 S.Ct. 3039, 3043, 87 L.Ed.2d 38 (1985).

**3.** The breadth of the third rationale is explained in *Johnson.*

> Even if military negligence is not specifically alleged in a tort action, a suit based upon service-related activity necessarily impli-

cates the military judgments and decisions that are inextricably intertwined with the conduct of the military mission. Moreover, military discipline involves not only obedience to orders, but more generally duty and loyalty to one's service and to one's country. Suits brought by service members against the Government for service-related injuries could undermine the commitment essential to effective service and thus have the potential to disrupt military discipline in the broadest sense of the word.

*Johnson,* 481 U.S. at 691, 107 S.Ct. at 2069 (footnote omitted).

trine since its inception,[4] and called into question the rationales supporting the doctrine and its continued viability.[5] Furthermore, Supreme Court cases have been unclear as to how much weight should be accorded to each of the rationales, which has lead to varied approaches by lower courts to determine whether an injury is "incident to service," often resulting in what some see as nitpicking differences and incongruous results. *See, e.g., Dreier v. United States,* 106 F.3d 844, 852 (9th Cir.1996) ("These cases reflect the fine distinctions that are often determinative when the *Feres* doctrine is applied to a particular fact situation").

The most narrow approach employed by courts to determine "incident to service" focuses on the duty status of the claimant. If the claimant is on "active duty" when the injury occurs, his suit is barred by the *Feres* doctrine. *See, e.g., Harten v. Coons,* 502 F.2d 1363, 1365 (10th Cir.1974). The approach is most often applied in situations where a service member takes advantage of military benefits, such as medical treatment, offered solely because of his status as an active duty service member. *See, e.g., id.* ("Surgery ... is 'incidental to service' when performed upon a serviceman on active duty because the serviceman

is taking advantage of medical privileges granted only to military personnel"). Another approach involves a review of the following three factors: 1) the claimant's duty status, 2) where the injury occurred, and 3) the activity being performed. *See Elliott v. United States,* 13 F.3d 1555, 1560 (11th Cir.1994), *rev'd en banc and aff'd. by an equally divided court,* 37 F.3d 617 (1994); *Kelly v. Panama Canal Comm'n,* 26 F.3d 597, 600 (5th Cir.1994). Some courts add a fourth factor to the analysis and ask whether the injured person was acting under the compulsion of military orders or on a military mission or directly subject to military control. *See, e.g., Miller v. United States,* 643 F.2d 481, 483 (8th Cir.1980).[6]

Many Tenth Circuit decisions discussing *Feres* involve medical malpractice claims and follow the first approach focusing either exclusively or primarily on the duty status of the claimant. *See Quintana v. United States,* 997 F.2d 711 (10th Cir. 1993); *Madsen v. United States,* 841 F.2d 1011 (10th Cir.1987); *Harten,* 502 F.2d at 1363. The justification for focusing on duty status in claims involving alleged military medical malpractice is explained in *Harten.*

---

Prior to *Johnson,* many courts believed the first two rationales supporting *Feres* were dead, and the most important factor was the effect of a suit on military discipline. However, after *Johnson,* it is clear that lower courts must consider the applicability of the other two rationales. *Shaw,* 854 F.2d at 364 n. 5.

**4.** *See, e.g., Day v. Massachusetts Air Nat'l Guard,* 167 F.3d 678, 1999 WL 44728 (1st Cir.1999) ("In the ensuing half-century, the Court has reaffirmed and expanded the *Feres* Doctrine, while somewhat adjusting the reasons given for it"); *Stewart v. Unites States,* 90 F.3d 102, 105 (4th Cir.1996) (the Supreme Court "has embarked on a course dedicated to broadening the *Feres* doctrine to encompass, at a minimum, *all* injuries suffered by military personnel that are even remotely related to the individual's status as a member of the military." (quoting *Major v. United States,* 835 F.2d 641, 644 (6th Cir.1987) (emphasis in original)); *Shaw,* 854 F.2d at 364 (quoting *Major* ).

**5.** *See, e.g., Johnson,* 481 U.S. at 700, 107 S.Ct. at 2074 (Scalia, J., dissenting, joined by Brennan, Marshall, and Stevens, JJ.); *Day,* 167 F.3d 678, 682 ("A few of *Feres's* original reasons no longer seem so persuasive ... and intrusions by courts to grant equitable relief in military matters have become more familiar in recent years"); *Backman v. United States,* 1998 WL 421955, 153 F.3d 726(10th Cir.1998) (unpublished) (Henry, J., concurring) (noting the "dubious foundation of *Feres* seems to be weakening"); *Labash v. United States Dept. of the Army,* 668 F.2d 1153, 1156 (10th Cir.1982) (recognizing courts reservations about the validity of *Feres* ).

**6.** In a practical manner, some courts focus on the similarity of the present case to those of past decisions to determine whether the *Feres* doctrine applies. *See, e.g., Dreier v. United States,* 106 F.3d 844, 848 (9th Cir.1996) (discussing previous decisions most factually analogous to the instant case).

It is obvious that the injured man could not have been admitted, and would not have been admitted, to the Naval Hospital except for his military status. He was there treated by Naval medical personnel solely because of that status. It inescapably follows that whatever happened to him in that hospital and during the course of that treatment had to be 'in the course of activity incident to service.'

502 F.2d at 1365. Focusing primarily on duty status in this matter would be improper because plaintiff was not permitted to use the club solely because of his military status. Rather, the club was open to both military personnel and civilians alike.

A more appropriate analytical framework is found in *Shaw* which involved a service member's FTCA suit for injuries he sustained in an on-base collision with another service member. The circuit considered whether the rationales underlying the *Feres* doctrine supported its application and reviewed the facts to determine whether the service member's activity was "related in some relevant way to his military duties." *See Shaw*, 854 F.2d at 363 (quoting *Johnson v. United States*, 704 F.2d 1431, 1438 (9th Cir.1983)).

In sum, the court must review the totality of the facts and circumstances surrounding plaintiff's injuries to determine whether the *Feres* doctrine bars his FTCA claim. *See id.* After reviewing the circumstances of plaintiff's injuries, and the rationales underlying the doctrine, the court finds plaintiff's FTCA suit is barred because his injuries occurred incident to his military service. There is no question that plaintiff's injuries were "at least 'remotely related' to [his] military service." *Corey v. United States*, 1997 WL 474521, at *5, 124 F.3d 216(10th Cir. Aug.20, 1997).

## B. *DUTY STATUS*

■ Naturally, one of the facts always discussed when determining whether *Feres* bars a claim against the government is the claimant's duty status. According to plaintiff's facts, he was "on authorized pass." (Doc. 15 at 3, ¶ 7). Although plaintiff was off-duty and enjoying a recreational activity on the base, he was on active duty in the military at the time of his injuries. Obviously, the fact that plaintiff was an active member in the military makes it more likely that the *Feres* doctrine applies to his claims. *See, e.g., Shaw*, 854 F.2d at 363 (discussing claimant's duty status in the incident to service analysis).

■ The fact that the injuries occurred while plaintiff was off-duty and involved in a recreational activity does not prevent application of the *Feres* doctrine. *See, e.g., Millang v. United States*, 817 F.2d 533, 535–36 (9th Cir.1987) (recognizing that even though claimant was engaged in a recreational activity and off-duty, suit still implicated military discipline); *Bon v. United States*, 802 F.2d 1092, 1095 (9th Cir.1986) (finding the presence of direct military control sufficient to invoke *Feres* despite the fact that the claimant was off-duty and involved in a recreational activity); *Bozeman v. United States*, 780 F.2d 198, 202 (2d Cir.1985) (recognizing that suit against the government for alleged negligence of military club bartender would require questioning of a wide range of military and disciplinary decisions).

## C. *ON POST*

Courts also look at whether a claimant's injuries occurred on post when determining whether *Feres* applies. *See, e.g., Shaw*, 854 F.2d. at 363.

> Since [plaintiff] was both on active duty status and on the premises of the Naval Air Station at the time of the accident, he was engaged in activity incident to service. That he had been relieved from his routine duties is not determinative. While on active duty and on the base, [plaintiff] was still subject to all military regulations and discipline and was readily available for emergency service or temporary duties.

See id. (quoting *Mason v. United States,* 568 F.2d 1135, 1136 (5th Cir.1978)) (brackets in original); *see also Stewart v. United States,* 90 F.3d 102, 105 (4th Cir.1996) (finding facts that collision occurred on a military base and claimant was on active duty at the time of the collision militated in favor of *Feres*'s application); *Kelly,* 26 F.3d at 600 ("Feres is more likely to bar recovery when military personnel are injured on base"); *cf. Dreier,* 106 F.3d at 852 (discussing location of injury in the *Feres* analysis but stating the situs of the injury is not determinative).[7]

Plaintiff emphasizes that civilians were permitted into the club without any pass, *see* Doc. 15 at 13, and discusses the Ninth Circuit's treatment of civilian access to the situs of a claimant's injury in *Dreier. Dreier* involved the death of a service member when he fell into an on-base wastewater drainage channel. The *Dreier* court recognized that a service member's injuries could be incident to service despite public access to the site where the injury occurred. *See* 106 F.3d at 853. However, the court determined the factor weighed against application of *Feres* because the claimant's use of the area in which he was injured "[could] hardly be characterized as a privilege or benefit incident to his military service." *Id.* (quoting *Johnson,* 704 F.2d at 1439).

█ In plaintiff's case, his use of the club is a privilege and a benefit. As discussed *infra* section III.D., the club is established and permitted by Army regulations for the recreation of Fort Riley military personnel. If it were not for its establishment by Army regulations, plaintiff would not have been able to undertake

the on-post activity in which he was involved at the time of his injuries. In addition, the permitted use by civilians itself can be considered a benefit because of the intangible social value service members receive from their interactions with civilians and the financial support civilians provide to the club. Although the public's access factors against application of *Feres,* it is much less of a factor in plaintiff's case than it was in *Dreier.*[8]

## D. *ACTIVITY ENGAGED IN AND DIRECT MILITARY CONTROL*

Other factors discussed by courts are the type of activity engaged in when the injury occurred and whether there was direct military control over the activity. *See, e.g., Kelly,* 26 F.3d at 600. With respect to the type of activity, the Fifth Circuit examines the nature of the activity to see if it serves some military function. *See id.* at 600. The Army itself identifies numerous purposes for nonappropriated fund instrumentalities, including the club, in its own regulations. According to the Army, the club provides recreational activity and benefits morale, *see* AR 215–1 at § 2–12a; supports military readiness, recruiting, and retention of quality personnel, *see* AR 215–1 at § 2–2d; and provides numerous other benefits, *see* AR 215–1 at § 2–3. Clearly, the Army believes the activity in which plaintiff was engaged serves some military function. Any further review of the activity, such as whether it actually accomplishes its goals or is necessary, would insert the judiciary into the affairs of the military and even further implicate the *Feres* doctrine.[9]

---

7. *Dreier v. United States,* 95 F.3d 1435 (9th Cir.1996), was discussed in plaintiff's response. However, it was later amended and superceded by *Dreier v. United States,* 106 F.3d 844 (1996).

8. Although plaintiff's injuries resulted from the acts of civilians, the application of *Feres* to a particular case does not depend upon the military status of the alleged tortfeasor.

*Johnson,* 481 U.S. at 686–87, 107 S.Ct. at 2066–67.

9. Plaintiff places reliance on *Durant v. Neneman,* 884 F.2d 1350 (10th Cir.1989), apparently contending *Feres* is inapplicable because plaintiff was involved in a distinctly non-military act. (Doc. 15 at 12). However, *Durant* does not involve the *Feres* doctrine. Rather, it involves the doctrine of intra-military immunity. *See id.* at 1351 ("The immunity es-

Courts also consider the nature of the military's control over the engaged in activity. *See Kelly,* F.3d at 600 (finding that no special military rules or regulations governed the claimant's activity); *Roush v. United States,* 752 F.2d 1460, 1465 (9th Cir.1985) (remanding to determine whether claimant was subject to direct military control when injured). Plaintiff cites both *Kelly* and *Roush* in his brief in opposition to the government's motion. The decisions, however, do not bolster application of the *Feres* doctrine to this suit. Both decisions rely on the military's lack of direct control over the service member's activity in finding that *Feres* is not immediately applicable.

In *Roush,* a marine was injured when a bouncer forcible removed him from a club located on a military base. The club was a nonappropriated fund instrumentality, and the bouncer was an off-duty marine. In discussing whether the *Feres* doctrine applied, the court stated the doctrine would apply if it was shown that either the bouncer or the injured service member were "within the direct control of the military at the time the negligent act occurred." 752 F.2d at 1464. However, there was no such evidence so the court remanded the case for further determination by the district court. *See id.* at 1465.[10]

*Kelly* involved a case where a service member was killed when his catamaran struck hanging electrical wires which were maintained by the Panama Canal Commis-

sion, an agency of the United States. 26 F.3d at 599. The service member had rented the catamaran from a civilian-run club located on a naval base. *See id.* One of the facts relied upon by the court in determining the inapplicability of the *Feres* doctrine was that there were no special military rules or regulations governing the conditions of the service member's sailing. 26 F.3d at 600.[11]

The decisions are easily distinguished. There is uncontradicted evidence in this case that the club is under the direct operational control of the Fort Riley base commander. AR 215–1 at § 2–24; *see also* AR 215–2 at § 2–1d (use of the club may be suspended, terminated or denied at any time by the base commander). Furthermore, there are numerous and detailed Army regulations governing the Army's MWR program and the establishment and operation of nonappropriated fund instrumentalities such as the club. These two facts, along with the others already discussed, buttress the applicability of the *Feres* doctrine to plaintiff's FTCA suit. *See, e.g., Mariano v. United States,* 605 F.2d 721, 723 (4th Cir.1979) (discussing the base commander's direct control of a military club as supporting the application of *Feres* ).

### E. THE RATIONALES SUPPORTING FERES

In addition to being supported by the facts, the rationales underlying *Feres* also counsel its application. Naturally, because

tablished in *Feres* attaches only when an action has been brought against the government under the [FTCA]"). As the court recognized, intra-military immunity cases are judged by different standards than cases involving the *Feres* doctrine. *See id.* at 1354 n. 5.

10. The lack of direct military control was also a factor in the *Dreier* opinion discussed *supra* section III.C. In *Dreier,* the Ninth Circuit found that the claimant was not subject to direct military orders and regulations when he fell into the waste water drainage system. 106 F.3d at 853.

11. *Kelly* is also distinguishable on other grounds. The court cited the following facts, in addition to the lack of direct military control, in support of its determination that *Feres* was inapplicable: 1) the accident occurred while the service member was off-duty; 2) the accident occurred off-base; 3) the service member was killed in a pure leisure activity that served no military purpose; and 4) the suit did not affect military discipline or involve military judgment. 26 F.3d at 600–01. Based on the court's previous analysis, the only similarity between *Kelly* and plaintiff's suit is both involved off-duty service members.

the club is permitted and maintained pursuant to Army regulations, located on Fort Riley and subject to the control of the base commander, maintenance of plaintiff's FTCA suit will likely implicate military discipline and judicial interference in military affairs, the third rationale underlying the doctrine. As the Supreme Court stated in *Shearer*, "what is important is whether the FTCA suit 'requires the civilian court to second-guess military decisions and whether the suit might impair essential military discipline.'" *Shaw*, 854 F.2d at 364 n. 3 (quoting *Shearer*, 473 U.S. at 57, 105 S.Ct. at 3042).

Although plaintiff does not provide a detailed recitation of the basis for his negligence claim in his complaint, he does allege the government was aware the club had a history of violent activity and that the government owed a duty to provide adequate security from violent incidents. (Doc. 1 at ¶¶ 9 and 10). Such an allegation calls into question the military's management of the club and the adequacy of the security measures in effect to protect club patrons. Evidence would presumably address Army staffing decisions, previous conflicts at the club and how the military handled them, and testimony about club regulations and whether they were followed by club employees. Moreover, because the incident involved civilian patrons, the suit may implicate the military's decision to permit civilians on base and the disciplinary treatment of them once in the club. In sum, the suit would result in much second-guessing of military decisions and involve judicial inquiry into military affairs which may impair military discipline and effectiveness.

The other *Feres* rationales are also implicated. At the time of his injuries, plaintiff was an active member of the United States Army taking advantage of a recreational facility located in the confines of Fort Riley. The club was created, sustained and operated under Army regulations and under the control of the base commander. The situation illustrates the distinct federal relationship between plaintiff and the government. *See, e.g., Shaw*, 854 F.2d at 364 (discussing the first *Feres* rationale). Furthermore, following his injuries, plaintiff received medical attention and rehabilitation at military facilities and disability benefits pursuant to the Veterans Benefit Act. *See id.* at 365 (discussing a claimant's receipt of military medical treatment and disability benefits as implicating the second *Feres* rationale).

## IV. CONCLUSION

The court finds, based on a review of the facts and circumstances of the case, plaintiff's injuries were related in some relevant way to his military service. Furthermore, the rationales underlying the *Feres* doctrine support its application. Therefore, the court concludes plaintiff's injuries occurred incident to his military service and maintenance of his FTCA suit is barred pursuant to the *Feres* doctrine. Thus, defendant's motion to dismiss (Doc. 6) is sustained.

IT IS SO ORDERED.