**F I L E D**
United States Court of Appeals
Tenth Circuit

APR 5 2000

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JULIUS PRINGLE,

        Plaintiff-Appellant,

v.

UNITED STATES OF AMERICA,

        Defendant-Appellee.

No. 99-3139

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 98-CV-1085-B)**

Submitted on the briefs:

Steven Hornbaker of Harper, Hornbaker, Altenhofen & Opat, Chartered, Junction City, Kansas, for Plaintiff-Appellant.

David W. Ogden, Acting Assistant Attorney General; Jackie N. Williams, United States Attorney; Robert S. Greenspan and Daniel L. Kaplan, Attorneys, Appellate Staff, Washington, D.C., for Defendant-Appellee.

Before **BALDOCK** , **HENRY** , and **MURPHY** , Circuit Judges.

**PER CURIAM.**

Plaintiff-appellant Julius Pringle appeals from the district court's order dismissing his complaint brought pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671-80 (FTCA). The district court determined that it lacked jurisdiction under the rule in Feres v. United States, 340 U.S. 135 (1950). We agree and affirm. [1]

1. Relevant Facts

At the time of the events giving rise to his complaint, appellant was on active duty in the United States Army. He was seriously injured while on the premises of Club Troopers, a club located on the Fort Riley Military Reservation. Club Troopers is operated by the United States out of non-allocated funds as part of its Morale, Welfare and Recreation (MWR) system. Civilians as well as military personnel are allowed on the premises, and Club Troopers employs military personnel as bartenders and bouncers.

Appellant alleges that while he was in Club Troopers on September 17, 1995, he had "words" with members of a Junction City, Kansas gang, and club employees intervened. They later ejected appellant from the club into the parking lot among gang members involved in the earlier altercation. There, he was

---

[1] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

severely beaten by the gang members, causing him permanent brain damage and other physical injuries.

In his complaint, appellant claimed the club employees negligently ejected him from the club and failed to provide him with adequate safety. He also maintained that the club had a reputation for violence and that the United States failed to take protective measures to ensure the safety of club patrons.

2. Standard of Review

We begin by considering the procedural posture of this case. In granting the motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), the district court considered materials outside the pleadings and made factual findings.

> When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's references to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

> However, a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case. The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case.

Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995) (citations omitted).

In treating the motion as one to dismiss rather than for summary judgment, the district court determined that the jurisdictional question was not intertwined with the merits of the case. It reasoned that since the outcome of the jurisdictional issue depended on Feres, a judicially-created doctrine and not a provision of the FTCA, it was not intertwined with merits issues arising under the FTCA, the statute which creates the claim. See Pringle v. United States, 44 F. Supp. 2d 1168, 1169 (D. Kan. 1999).

Although Feres is judge-made law, in deriving the rule the Supreme Court stated that its task was one of statutory construction of the FTCA. See Feres, 340 U.S. at 138 ("There are few guiding materials for our task of statutory construction."). The fact that Feres was promulgated by a court, rather than enacted as part of the FTCA, is therefore not dispositive of the conversion issue.

The district court relied on language in Wheeler v. Hurdman, 825 F.2d 257, 259 (10th Cir. 1987), stating that the court examines whether the jurisdictional issue arises from the same statute that provides the substantive claim. Under Wheeler, however, the focus of the inquiry is not merely on whether the merits and the jurisdictional issue arise under the same statute. Rather, the underlying issue is whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim. Wheeler, 825 F.2d at 259; see also generally

5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1350, at 235 (1990). [2]

We have stated, in a number of cases involving the discretionary function exception to the FTCA, that "the determination of whether the FTCA excepts the government's actions from its waiver of sovereign immunity involves both jurisdictional and merits issues." Bell v. United States, 127 F.3d 1226, 1228 (10th Cir. 1997) (quotation omitted). The Feres doctrine, which also determines whether the FTCA acts to except the government's actions from its waiver of sovereign immunity, likewise implicates merits issues.

Accordingly, this case should have been decided on summary judgment rather than as a 12(b)(1) motion to dismiss. [3] We will therefore exercise our

---

[2]     Certainly, in cases where the jurisdictional issue depends on a statute wholly separate from the statute that provides the substantive claim, it is easy to see that the merits are not intertwined with the jurisdictional issue. In Holt, for example, the jurisdictional issue depended on the Flood Control Act of 1928, 33 U.S.C. § 702c, while the underlying claim arose under the FTCA.

[3]     Some courts have explicitly treated motions to dismiss pursuant to the Feres doctrine as 12(b)(1) motions rather than as motions for summary judgment. See, e.g., Dreier v. United States, 106 F.3d 844, 847 (9th Cir. 1997). These cases, however, do not address the "intertwining" issue which must be addressed here.

In order to resolve the Feres issue, the district court considered and made factual findings concerning appellant's duty status, whether his injuries occurred on a military base, the type of activity appellant engaged in when the injury occurred, and whether there was direct military control over that activity. Some of these factors clearly overlap with the merits of the FTCA claim.

-5-

plenary power to treat the government's motion to dismiss as a motion for summary judgment. See Bell, 127 F.3d at 1228. Our summary judgment standard of review requires us to determine de novo whether there is any genuine disputed issue of material fact and whether the prevailing party was entitled to judgment as a matter of law. See McKnight v. Kimberly Clark Corp., 149 F.3d 1125, 1128 (10th Cir. 1998).

3. The Feres Doctrine

As mentioned, Feres is a judicially-created exception to the FTCA's waiver of sovereign immunity barring FTCA claims when they are brought "for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." Feres, 340 U.S. at 146. The doctrine rests on three basic grounds: "(1) the distinctly federal nature of the relationship between the government and members of its armed forces; (2) the availability of alternative compensation systems; and (3) the fear of damaging the military disciplinary structure." Madsen v. United States ex rel. United States Army Corps of Engineers, 841 F.2d 1011, 1013 (10th Cir. 1987) (quotation omitted).

In recent years, the Supreme Court has broadened Feres, to the point where it now "encompass[es], at a minimum, *all* injuries suffered by military personnel that are even remotely related to the individual's *status* as a member of the military." Persons v. United States, 925 F.2d 292, 296 n.7 (9th Cir. 1991)

-6-

(quotation omitted); _see also_ Shaw v. United States, 854 F.2d 360, 364 (10th Cir. 1988).

> [C]ourts applying the _Feres_ doctrine have given a broad reach to _Feres_' "incident to service" test and have barred recovery by members of the armed services for injuries that at first blush may not have appeared to be closely related to their military service or status. _Practically any suit that implicates the military['s] judgments and decisions runs the risk of colliding with_ _Feres_.

Dreier v. United States, 106 F.3d 844, 848 (9th Cir. 1997) (quotations omitted; emphasis added).

In applying _Feres_, we are mindful that the doctrine "cannot be reduced to a few bright-line rules; each case must be examined in light of the statute as it has been construed in _Feres_ and subsequent cases." United States v. Shearer, 473 U.S. 52, 57 (1985). The Ninth Circuit has established guidelines for the application of _Feres_, however, that we find useful to our analysis. That circuit looks to four factors to determine whether an activity is incident to military service:

> (1) the place where the negligent act occurred;
> (2) the duty status of the plaintiff when the negligent act occurred;
> (3) the benefits accruing to the plaintiff because of his status as a service member; and
> (4) the nature of the plaintiff's activities at the time the negligent act occurred.

Dreier, 106 F.3d at 848.

In order to apply these four factors properly in this case, we begin by examining prior cases that are factually analogous to the present case. See id. at 849. As the district court noted, most Tenth Circuit cases dealing with the issue of whether injuries were "incident to service" are not particularly close to this fact pattern or helpful to our analysis. There is one recent unpublished case from this circuit which bears on this issue, however.

In Corey v. United States, No. 96-6409, 1997 WL 474521 (10th Cir. Aug. 20, 1997) (unpublished), the plaintiff was a former member of the United States Air Force who attended a party at Incirlik Air Base in Turkey. During the party, an Air Force colonel became intoxicated and assaulted her by grabbing her buttocks. The plaintiff's complaint charged that the Air Force had established a system which discouraged complaints against its senior officers, and that it had failed to adequately supervise, train, investigate and discipline its members regarding sexual harassment. We affirmed the district court's dismissal of the complaint pursuant to Feres:

> Ms. Corey's participation in the party at which her injuries occurred was a consequence of her military status. The party occurred on base and was organized and attended by military members. Those participating in the party–including Ms. Corey and the individual defendants–were subject to military discipline and control. Thus, we believe the injuries suffered by Ms. Corey were at least "remotely related" to her military status.

Id. at **5.

-8-

This court went on to hold that the fact that Ms. Corey's injuries occurred during a recreational activity did not prevent the application of Feres. See id. Allowing the complaint to proceed "would be inviting the district court to second-guess the military decisions made concerning the conduct that occurred at the on-base party." Id.

Corey relied on a number of Ninth Circuit cases that bear on this issue, including Millang v. United States, 817 F.2d 533 (9th Cir. 1987) and Bon v. United States, 802 F.2d 1092 (9th Cir. 1986). In Millang, an off-duty military policeman attended a picnic at a park located at a Marine Corps air station. An on-duty military policeman arrived, and after some horseplay, began to drive off in his truck. He ran over the plaintiff. The district court found Feres inapplicable because the plaintiff was off duty at a site where non-military personnel were present. The Ninth Circuit disagreed and reversed. It noted that the plaintiff enjoyed the use of the picnic area solely because of his status as a serviceman. See Millang, 817 F.2d at 535. Also, the picnic area was under complete control of the commanding officer of the air station. See id. Finally, the plaintiff's claim that an on-duty soldier acted negligently while discharging his duties in an area subject to military control could call military decisions into question. See id. at 535-36.

In Bon, the plaintiff was on active duty with the United States Navy, on authorized liberty and not engaged in official duties. She was injured when her canoe was struck by a motorboat that was also operated by an active duty service member on authorized liberty. The Ninth Circuit held that Feres applied. The accident occurred on or near a naval training center. See Bon, 802 F.2d at 1095. Both the plaintiff and the operator of the motor boat were active duty service members taking part in an activity provided for the benefit of their military service. See id. Because the purpose of the recreational facility was to provide "wholesome and constructive off-duty leisure and recreation activities which will effectively contribute to the mental and physical well being of the participants," id. at 1093 (quotation omitted), the benefits accruing to plaintiff and the nature of her activities clearly indicated that her activities were incident to her military service, see id. at 1095.

Bon in turn relied on an earlier case, Roush v. United States, 752 F.2d 1460 (9th Cir. 1985). In that case, the plaintiff was injured at an enlisted men's club located on the El Toro Marine Corps base when a bouncer who was an off-duty Marine ejected him from the club. The Ninth Circuit held that certain facts favored the application of Feres: the plaintiff was an active duty Marine patron at the club, which was operated only for enlisted men and their guests, and he was injured by the act of another active duty Marine. Id. at 1464. There was,

-10-

however, no evidence concerning whether the plaintiff and the bouncer were under direct control of the military at the time of his injuries. See id. at 1464-65. The Ninth Circuit therefore remanded for further factual development on that issue, stating that if the government could show such direct control, the case should be dismissed pursuant to Feres.

Both Bon and Roush distinguished an earlier case, Johnson v. United States, 704 F.2d 1431 (9th Cir. 1983), on which appellant relies. In Johnson, the plaintiff was injured off-base in an automobile accident while on active duty. During his off-duty hours, he was employed as a bartender at an officers' club on base. On the morning of the accident, the plaintiff and his fellow bartenders failed to close the club at 2:00 a.m. as required by law. Instead, they held a party until 4:30 a.m., after which a fellow bartender, also on active duty, offered to drive the plaintiff home. The plaintiff was injured when the car collided with a tree about a mile outside the entrance to the base. The Ninth Circuit held that the accident was not incident to the plaintiff's military service, and that Feres therefore did not apply. See Johnson, 704 F.2d at 1440-41. The fact that the negligence (keeping the club open longer than law permitted) occurred on a military base did not automatically bar recovery, as the connection between the negligence and the plaintiff's military service was so tenuous that location was not an important consideration. See id. at 1437. Although the plaintiff was on

-11-

active duty, his off-duty work as a bartender bore no relevant relationship to the military disciplinary structure.    See id. at 1438.  His employment as a bartender was not recreational and could hardly be considered a benefit or privilege incident to his military service.    See id. at 1438-39.  The plaintiff was not subject to the compulsion of military orders or performing a military mission, and was subject to military discipline "only in the very remotest sense."    Id. at 1439-40.  Finally, the government's negligence did not occur because of a decision requiring military expertise or judgment.    See id.

Appellant cites an additional Ninth Circuit case,    Dreier , for our consideration.  In that case, a soldier on active duty fell into an on-base wastewater drainage channel after an off-duty afternoon of relaxation and beer drinking.  The drainage channel was flushed and he was injured and drowned. The channel was located in Solo Point, an area of Fort Lewis which was officially limited to members of the military community and civilians with use permits. In practice, however, the public could often gain access to this area without acquiring a permit.  The Ninth Circuit analyzed    Johnson , Millang , Bon, Roush , and other cases, noting that "fine distinctions . . . are often determinative when the Feres doctrine is applied to a particular fact situation."    Dreier , 106 F.3d at 852.

-12-

In Dreier, the Ninth Circuit held that Feres did not apply. See id. The fact that the injury occurred on base was not determinative. See id. More important was the fact that the plaintiff's presence at the Solo Point area was indistinguishable from that of a civilian who could participate in the same leisure activities. See id. at 853. Since in practice, civilians could drink and swim at Solo Point without obtaining a pass or passing through checkpoints, the plaintiff was in the same position as a civilian when his injuries occurred. See id. For similar reasons, the plaintiff was not enjoying a privilege or benefit incident to military service; the area where he was injured was in essence open to the public. See id. Like the plaintiff in Johnson, he was subject to military discipline only in a remote sense. See id. Finally, most of the employees overseeing the water treatment plant which caused the flushing leading to plaintiff's death were civilians rather than military personnel. See id.

4. Application of Feres to this Case

Having surveyed a number of cases which bear on this issue, we now move to analysis of factors in this case. The negligent acts alleged here occurred at Club Troopers, a club which is located on the Fort Riley Military Reservation. The on-base location of the club, while not controlling, certainly weighs in favor of finding that injuries sustained there were incident to service. See Bon, 802 F.2d at 1095 ("Although the location of the accident is not controlling, it is

-13-

an important factor.").  With regard to location, this case is more like Roush, where the injury occurred at an enlisted mens' club on base, than Dreier, where the injury occurred in an outdoor drainage ditch in an area accessible to the public.

Appellant was on active duty when his injury occurred.  We cannot say, as in Johnson, that his presence at the club had "no relevant relationship to his on-base military activities."  704 F.2d at 1437.  Rather, like the plaintiff in Bon, he was engaged in recreational activity at a location provided to servicemen for this purpose by the military.  See Bon, 802 F.2d at 1093.

Appellant received a privilege of engaging in recreational activities by virtue of his military service.  The club where he was injured is a "nonappropriated fund instrumentality"; that is, an entity established by the military for the benefit of military personnel, their dependents, and authorized civilians, supported by funds other than those appropriated by Congress.  See Appellant's App. at 44.  Such instrumentalities are under military regulation and control and perform an essential government function by providing for the comfort, pleasure and contentment of military personnel.  See generally Bozeman v. United States, 780 F.2d 198, 199 & n.2 (2d Cir. 1985).  While civilians were also allowed in the club, this did not vitiate the benefit provided to appellant through the club by virtue of his military service.

-14-

Appellant was subject to military discipline and control while at the club. As the district court noted, the uncontradicted evidence in this case shows that the club is under the operational control of the Fort Riley base commander. The commander has the authority to suspend, terminate or deny privileges of servicemen to participate in such activities if he deems it in the best interests of the activity, the installation, or the Army. Numerous Army regulations govern the establishment and operation of nonappropriated fund instrumentalities such as the club. See also id. at 199 (holding, based on Army regulations, that club constituting nonappropriated fund instrumentality was under military regulation and control). We conclude that this case more closely resembles Corey, Millang, and Bon, in which Feres applied, than it does Johnson and Dreier, in which Feres was held not to bar the plaintiffs' causes of action.

Finally, we consider whether application of Feres here serves the rationales underlying the doctrine. We conclude that it does. The relationship between the Army and service personnel engaged in recreational activities under the Army's MWR program is "distinctively federal" in character. Such programs exist in many state jurisdictions and the Army's liability for how it operates a club should not be subject to the "fortuity of where the soldier happened to be stationed at the time of the injury." United States v. Johnson, 481 U.S. 681, 684 n.2 (1987).

-15-

Further, appellant has been compensated in an alternative fashion by the military for his injury. He received medical attention and rehabilitation from military facilities. He also receives military retired pay based on his disability.

The most important of these rationales concerns whether this suit "requires the civilian court to second-guess military decisions and whether the suit might impair essential military discipline." Shearer, 473 U.S. at 57 (citation omitted). Appellant's complaint alleges that the government was aware of the club's violent reputation and failed to provide him with adequate protection from violence. As the district court aptly stated:

> Such an allegation calls into question the military's management of the club and the adequacy of the security measures in effect to protect club patrons. Evidence would presumably address Army staffing decisions, previous conflicts at the club and how the military handled them, and testimony about club regulations and whether they were followed by club employees. Moreover, because the incident involved civilian patrons, the suit may implicate the military's decision to permit civilians on base and the disciplinary treatment of them once in the club. In sum, the suit would result in much second-guessing of military decisions and involve judicial inquiry into military affairs which may impair military discipline and effectiveness.

Pringle, 44 F. Supp. 2d at 1176.

Feres is also supported by the notion that military discipline provides a separate means of penalizing and restraining those who injure their fellow military personnel. We presume that such discipline is available when needed to

-16-

restrain and punish misconduct which results in harm. Cf. Chappell v. Wallace, 462 U.S. 296, 303 (1983) ("The special status of the military has required, the Constitution contemplated, Congress has created and this Court has long recognized two systems of justice, to some extent parallel: one for civilians and one for military personnel.")

5.  Conclusion

We conclude that appellant's injuries were incident to his service in the United States Army and, consequently, <u>Feres</u> bars this action.  The judgment of the United States District Court for the District of Kansas is therefore AFFIRMED. [4]

---

[4]  Appellant also argues, as he did in the district court, that <u>Feres</u> should be overruled.  <u>See</u> <u>Johnson</u>, 481 U.S. at 692 (Scalia, J., dissenting) (subjecting <u>Feres</u> to vigorous criticism and suggesting that it be overruled).  We are compelled to follow decisions of the United States Supreme Court, but we note that appellant has effectively preserved this argument both in the district court and this court.