**Robert O. ORDAHL, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. CV–84–27–GF.**

United States District Court, D. Montana, Great Falls Division.

Jan. 2, 1985.

Randall O. Skorheim, Great Falls, Mont., for plaintiff.

Byron H. Dunbar, U.S. Atty., Carl E. Rostad, Asst. U.S. Atty., Great Falls, Mont., for defendant.

## MEMORANDUM AND ORDER

HATFIELD, District Judge.

Presently before the court are defendant's motions to reduce the *ad damnum* clause of plaintiff's complaint and to dismiss this action. Defendant alleges that this court lacks subject matter jurisdiction over the plaintiff's claim, which was filed under the Federal Tort Claims Act (hereinafter "FTCA"), 28 U.S.C. § 1346(b) and 2671 *et seq.*, and that plaintiff's complaint violates § 2675(b) of the FTCA.

On March 5, 1982, plaintiff was allegedly struck in the eye by a dart blown from a blowgun fired by Airman First Class Don A. Harvey. The blowgun is alleged to have been owned by Senior Airman Gregory L. Bucher. Plaintiff allegedly suffered serious physical injuries as well as loss of earning capacity and interference with his normal course of living. At the time of the incident, plaintiff was stationed at Malmstrom Air Force Base ("the Base"), and lived in a barracks building on Malmstrom Air Force Base, a military reservation. Plaintiff alleges that the defendant negligently or intentionally allowed the presence of the blowgun in the barracks; that the presence of such a weapon violates Air Force Regulations; and that the result of said negligence was injuries to plaintiff's eye.

On February 28, 1983, plaintiff filed his claim with the Claims Department, United States Air Force, wherein he alleged injuries to his person in the amount of $750,-000.00.[1] The claim was denied. Shortly thereafter, this action was commenced, in which plaintiff requested total damages of $1,000,000.00.

## MOTION TO REDUCE AD DAMNUM

■ On March 23, 1984, defendant moved that the ad damnum clause of plaintiff's action be reduced to $75,000.00 on the bases of 28 U.S.C. § 2675(b) and Rule 8(a)

Federal Rules of Civil Procedure.[2] On April 2, 1984, defendant was allowed to amend his motion to reduce the *ad damnum* to read $750,000.00, rather than $75,-000.00.

The federal courts have consistently held that unless the plaintiff establishes new evidence or intervening facts, that the *ad damnum* clause may not allege damages in excess of the amount claimed in the administrative action. *Kielwien v. United States*, 540 F.2d 676 (4th Cir.), cert. den., 429 U.S. 979, 97 S.Ct. 491, 50 L.Ed.2d 588 (1976); *Schwartz v. United States*, 446 F.2d 1380 (3rd Cir.1971).

In this case, the plaintiff has not responded to the United States' motion to reduce the *ad damnum* clause. Under the facts which now exist, no newly discovered evidence or intervening fact are apparent. In accordance with the Federal Tort Claims Act, the *ad damnum* clause of plaintiff's complaint must be reduced to $750,000.00.

## MOTION TO DISMISS

The motion to dismiss filed by the United States is based on allegations that plaintiff has failed to state a claim upon which relief can be granted, in that plaintiff was serving on active duty in the military at the time of the injury, and that the injury was "incident to service," thus barring recovery through the FTCA under the Feres doctrine. *Feres v. United States*, 340 U.S. 135, 146, 71 S.Ct. 153, 159, 95 L.Ed. 152 (1950). A review of the briefs and relevant case law leads the court to conclude that, under the particular facts of this case, plaintiff's injuries were not incident to service, and that his suit is not barred by the FTCA.

### A. THE FTCA

The FTCA was passed in order to waive the traditional sovereign immunity of the Federal Government in actions for

---

**1.** *See* Tab 8, Declaration of Col. Ramutis R. Semeta. 28 U.S.C. § 2675 mandates that, as a prerequisite to filing suit under the FTCA, a claimant must file a claim with the "appropriate Federal agency."

**2.** 28 U.S.C. § 2675(b) provides that:

> Action under this section shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency, except where the increased amount is based upon newly discovered evidence ... or upon allegations of proof of intervening facts, relating to the amount of the claim.

injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b). Additionally, it is provided by the FTCA that members of the armed forces are employees of the federal government. *Id.* at § 2671. Although the FTCA contains 12 exceptions to the general waiver of immunity, no exception bars suits by members of the military, except for claims arising out of "combatant activities ... during a time of war." *Id.* at § 2680(j).

## B. BROOKS—FERES—BROWN

Between 1949 and 1954, the United States Supreme Court considered the issue of whether injured military personnel are barred from recovering under the FTCA where injuries are caused by employees of the federal government. *See, e.g., Feres, Id., Brooks v. United States,* 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949); *United States v. Brown,* 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954). In *Brooks,* the first case to consider the issue, Welker Brooks, his brother Arthur, both members of the armed forces, and their father James, were involved in an automobile accident with a vehicle driven by a civilian employee of the Army. Arthur was killed, and Welker and James were injured. The court held that the accident had no relationship to the Brooks' army careers, that the injuries were not caused by their status in the service, and that the claim was cognizable under the FTCA. In dicta, the court conceded that permitting some claims by service members may interfere with military discipline, but stated that it found no Congressional intent to exclude every tort claim by service members regardless of the circumstances of the injury. Id. 337 U.S. at 51–52, 69 S.Ct. at 919–920.

The court next considered the issue in the *Feres* case, which was a consolidation of three cases brought by service members: *Feres,* brought by the executrix of Feres' estate for his death caused by a fire in his barracks, allegedly negligently caused by a defective heating plant, while he was on active duty; *Jefferson,* a medical malpractice action brought for injuries caused by Army doctors in an Army hospital by negligently leaving a 30-inch towel in plaintiff's stomach during an operation; and *Griggs,* another medical malpractice action brought by the executrix of Griggs' estate for negligent treatment by Army surgeons. The court held, in all three cases, that the injuries involved were incident to military service. *Brooks* and *Feres* were distinguished by the court, which noted that "Brooks did not arise out of or in the course of military service." *Feres* 340 U.S. at 146, 71 S.Ct. at 159.

The last case in which the court considered the issue, involved a discharged veteran who was suing for damages caused by negligent treatment by an Army doctor in a Veteran's Administration ("VA") hospital. *Brown, Id.* The court there held, consistent with *Brooks* and *Feres,* that because the injury occurred at a time while the injured party was not on active duty, the fact that his military service had entitled him to medical benefit did not constitute close enough nexus to render the injury "incident to service." Therefore, recovery under the FTCA was allowed. Id.

## C. AFTER FERES

■ Since *Brooks, Feres,* and *Brown,* federal circuit and district courts have wrangled with the definition of the scope of the term, "incident to service". A general rule which has been adopted in many courts is that where the activity in which the plaintiff was involved at the time of the alleged negligence is one which is dependent on the plaintiff's status in the military, recovery will not be allowed.[3]

---

**3.** *See, e.g., Chambers v. U.S.,* 357 F.2d 224 (8th Cir.1966) (death of active duty airman in swim-

ming pool on base); *Woodside v. United States,* 606 F.2d 134 (6th Cir.1979) (wrongful death

The general analysis which has evolved in the interpretation of the term "incident to service" in determining whether to allow recovery, hinges on the activity in which the plaintiff or injured service member was involved at the time of the injury. In a recent case, the Ninth Circuit has considered the issue and has more clearly defined the factors it considers in reaching a conclusion. *Johnson v. United States*, 704 F.2d 1431 (9th Cir.1983).

In *Johnson*, the court considered four factors in determining whether the injured service member's activities at the time of the injury are such as to provoke the operation of *Feres*. *Johnson, Id.* First, the court considers the place where the negligent act allegedly occurred, noting that "government negligence on a military base should not absolutely bar recovery." *Ids.* at 1436. With this analysis, the court expressly rejected a rationale it had used in a 1979 case, in which it distinguished between acts which occur "on-base" and those which occur "off-base." *Troglia v. U.S.*, 602 F.2d 1334, 1339 (9th Cir.1979). *See, e.g., Bryson, Id.; Downes v. U.S.*, 249 F.Supp. 626 (E.D.N.C.1965); *Rich v. U.S.*, 144 F.Supp. 791 (E.D.Pa.1956); *Nowotny v. Turner*, 203 F.Supp. 802 (M.D.N.C.1962). Instead, the court mandated that the circumstances surrounding the actual activity of the injured party must be considered. *Johnson* at 1437.

The second factor considered is the duty status of the plaintiff at the time of the injury. *Id.* While the court conceded that duty status is not dispositive, it is a mandatory consideration to the extent that it relates to the nexus between the activity and military service. *Id., see, e.g., Troglia, Id.; Woodside, Id.* In *Johnson*, a case first heard in U.S. District Court for the District of Montana, the injured service member was off duty at the time of the injury; there was no relationship between his service and the activity. *Johnson, Id.*

Third, the court considered the benefits of military service which accrue to the service member because of his status. *Id.* at 1439. The critical concern with this factor is whether the plaintiff was enjoying a purely military benefit at the time of the injury. *Id.* In *Johnson*, the service member was working at a second job which, although it was in a military club, he could have held as a civilian. Military status did not relate to this entitlement to participate in this employment.

Finally, the fourth factor considered in *Johnson* was the nature of the plaintiff's activities at the time of the negligent act. *Id.* The court viewed this factor as significant because of the concern expressed by the Supreme Court in *Feres* of eroding military discipline. *Feres, Id.* The court, consistent with *Feres*, was cautious in its approach to issues which may allow an injured service member to "second-guess" the judgment of his superiors. *Johnson, Id.* To allow an action which would amount to second-guessing of military decisions could easily affect the future willingness of service members to obey orders.

In light of the above four factors, the *Johnson* court considered all allegations by the plaintiff that his injuries were caused by government negligence in that it had allowed an NCO club to be open after hours in violation of Air Force Regulations. It held that plaintiff's activities at his second job were "purely personal", and "only in the remotest sense subject to military discipline." *Johnson* at 1439. In fact, with regard to the concern in some cases

action by widow of officer killed in plane crash where plane belonged to aero club of which he was a member by virtue of his military status); *Hass v. United States*, 518 F.2d 1138 (4th Cir. 1975) (Marine injured riding horse owned by Marine Corps); *Richardson v. United States*, 226 F.Supp. 49 (E.D.Va.1964) (Marine NCO on weekend liberty injured as he tried to escort an enlisted Marine from the NCO Club was incident to service because the Club was operated

for the benefit of soldiers and because the NCO acted pursuant to a perceived duty as a Marine); *Henninger v. U.S.*, 473 F.2d 814 (9th Cir.1973) (action for malpractice of Navy doctor barred); *Bryson v. U.S.*, 463 F.Supp. 908 (E.D.Pa.1978) (action of administratrix of estate of Army private allowed where decedent's actions were "in no significant way a consequence of his use or benefits ... available because of his status.")

about the potential erosion of military discipline, the court in *Johnson* held:

> We are not dealing with a case where the government's negligence occurred because of a decision requiring military expertise or judgment. Rather, the government is negligent precisely because it failed to follow established military rules and procedures....

*Id.* at 1440.

### D. JOHNSON AND ORDAHL

■ This case must be analyzed with respect to the *Johnson* factors. First, the alleged act of negligence (*i.e.*, allowing a blowgun in the barracks) occurred on base. As noted above, this fact does not bar recovery. *Johnson, Id.* Second, the duty status of the plaintiff Ordahl is that he was on active duty in an "off-duty" status. The relevant issue is whether his activities at the time of the injuries related in any way to his military duties. It is unknown what specific activity the plaintiff was involved in at the time of his injury, but it is conceded by both parties that he was off duty at the time. It appears that plaintiff's activities were not related to his military duties; he was in the barracks socializing with another service member who happened to live there.

Third, the benefits which accrue to plaintiff Ordahl because of his status in the military must be considered. The United States' position is that the plaintiff was taking advantage of a uniquely military benefit at the time of the injury in that he would not have been in the barracks were he not in the military. This court takes a contrary view; there is nothing which would preclude a civilian from visiting a service member at his barracks. As in *Johnson*, the plaintiff's military status did not bear a significant relationship to the activity. Regardless, the activity in this case is not the sort contemplated by the court as a government-sponsored "benefit" which would bar recovery. *See, e.g., Woodside, Id.; Chambers v. U.S.*, 357 F.2d 224, 229 (8th Cir.1966); *Hass, Id.*

Finally, the fourth *Johnson* factor must be considered, *i.e.*, the nature of plaintiff's activities at the time of the alleged negligent act. As in *Johnson*, it seems clear in the present case that the plaintiff was involved in a "purely personal" activity. Additionally, the government in this case was allegedly negligent because it failed to follow its own rules and regulations. Consequently, the court is unable to conclude that military discipline would be endangered by allowing the present action to proceed.

### E. CONCLUSION AND ORDER

For the reasons set forth above, IT IS HEREBY ORDERED AND ADJUDGED that defendant's motion to reduce the *ad damnum* clause in plaintiff's complaint to $750,000.00 be, and the same hereby is, GRANTED; and that defendant's motion to dismiss be, and the same hereby is, DENIED.