Pritam S. VERMA, Appellant,

v.

UNITED STATES of America,
et al., Appellees.

No. 92–5343.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 23, 1994.

Decided March 18, 1994.

Marc Fiedler, Washington, DC, argued the cause for appellant. With him on the briefs was Patrick M. Regan, Washington, DC.

Michael J. Ryan, Asst. U.S. Atty., Washington, DC, argued the cause for appellee. With him on the brief were Eric H. Holder Jr., U.S. Atty., and John D. Bates and R. Craig Lawrence, Asst. U.S. Attys. Michael L. Martinez, Asst. U.S. Atty., Washington, DC, at the time, entered an appearance.

Before MIKVA, Chief Judge; WILLIAMS and SENTELLE, Circuit Judges.

Opinion for the Court filed PER CURIAM.

PER CURIAM:

Pritam S. Verma, a former Army captain, brought suit against the United States, three Army officials and one civilian employee of the Army for damages resulting from the Army's alleged theft of Verma's personal property. The complaint, as amended, stated claims based on the due process and just compensation clauses of the Fifth Amendment and claims for conversion and replevin under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.* (1988). After applying the certification procedure of § 2679(d)(1), the district court dismissed the common law claims against the individual defendants and substituted the United States as defendant in their stead. The court then granted the government's motion to dismiss the suit, holding it barred by the intramilitary tort immunity doctrine of *Feres v. United States,* 340 U.S. 135, 146, 71 S.Ct. 153, 159, 95 L.Ed. 152 (1950).[1] Verma now appeals.

By virtue of *United States v. Stanley,* 483 U.S. 669, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987), and *United States v. Johnson,* 481 U.S. 681, 107 S.Ct. 2063, 95 L.Ed.2d 648 (1987), we need only decide whether the inju-

---

1. On July 24, 1989, the court entered an order that dismissed the constitutional claims and the conversion claim, but did not address the replevin claim. On August 7, Verma filed a motion for clarification that asked the court to rule on the replevin claim. The district court dismissed that claim as well by an order entered on August 26, 1992.

ries for which appellant seeks relief arose out of or in the course of activity incident to military service. *See Johnson,* 481 U.S. at 686, 107 S.Ct. at 2066. We hold that they did, and therefore affirm.

## I.

The facts set out in the complaint and supporting materials are as follows. As a post-doctoral fellow at Howard University between 1972 and 1978, Verma conducted research on atropine and. L-hyoscyamine. These drugs are effective antidotes against a certain class of modern chemical warfare agents. Eventually Verma managed to create antiserum (blood serum containing antibodies used in producing atropine) in three experimental rabbits at Howard University. Because no two creatures produce identical antisera, Verma estimates the value of the vials that contain the rabbits' blood at $200 million.

The Army recruited Verma in 1978 and commissioned him as a captain. From 1978 to 1983, Verma worked at the Walter Reed Army Institute of Research ("Walter Reed"), conducting research on the problem of "air blast overpressure" injury to Army servicemen. Verma continued his research into atropine and L-hyoscyamine at Howard during off-duty hours and published a study in 1982. In that same year Verma applied for a patent on the process for generating atropine antiserum and assigned his patent rights to the Army.

In 1982 Colonel Robert Smallridge, a department head at Walter Reed, initiated a new research project on atropine and L-hyoscyamine. The proposal for the project listed Verma as an Associate Investigator; in fact, Verma never served in that capacity and instead continued his blast overpressure research. Although Verma did do research on atropine and L-hyoscyamine at Walter Reed in 1983, that research was not associated with Smallridge's project. At the end of 1983, Verma received orders to report to Fort Sam Houston, Texas, for a training course for Army medical officers. Before leaving he transferred most of his vials of antiserum to various officials at Walter Reed, and the remainder to a professor at Virginia State University.

After Verma left Walter Reed the Army discovered that someone had tampered with the antiserum vials he left there. In 1984 the Army brought court-martial charges against Verma, alleging that he had substituted sheep blood for the rabbit antiserum and stolen property of the United States government. A Judge Advocate Investigator conducted a preliminary hearing pursuant to Article 32 of the Uniform Code of Military Justice, but concluded that the Army had failed to prove that the serum at Walter Reed was the property of the United States.

During the investigation the Army collected all of Verma's biologicals and transferred them to Walter Reed. Verma was eventually stationed at an Army medical center in Colorado. In 1984 Verma requested that the biologicals be sent to him. Colonel Smallridge wrote in return that although he would send some of the biologicals, "ones necessary for continued progress of the [Walter Reed] research programs are to be retained." Verma requested release from active duty in 1985 and received an honorable discharge in that year. In 1986, Verma filed an administrative tort claim with the Army, seeking $15 million in damages for alleged conversion of his atropine. When the claim was dismissed, Verma filed the instant action, seeking $200 million in damages.

## II.

*United States v. Johnson,* 481 U.S. 681, 107 S.Ct. 2063, 95 L.Ed.2d 648 (1987), strongly reaffirmed the broadest understanding of the *Feres* doctrine:

> In *Feres,* this Court held that service members cannot bring tort suits against the Government for injuries that "arise out of or are in the course of activity incident to service." 340 U.S., at 146 [71 S.Ct., at 159]. This Court has never deviated from this characterization of the *Feres* bar. Nor has Congress changed this standard in the close to 40 years since it was articulated....

481 U.S. at 686, 107 S.Ct. at 2066. *Feres* itself only precludes common law actions un-

der the Federal Tort Claims Act, but *Chappell v. Wallace,* 462 U.S. 296, 305, 103 S.Ct. 2362, 2368, 76 L.Ed.2d 586 (1983), and *United States v. Stanley,* 483 U.S. 669, 684, 107 S.Ct. 3054, 3064, 97 L.Ed.2d 550 (1987), extended the doctrine to bar claims implied under provisions of the federal Constitution. In *Bois v. Marsh,* 801 F.2d 462, 471 (D.C.Cir. 1986), we held that *Feres* applies to intentional as well as negligent torts. *Feres* encompasses claims for property damages just as much as ones for personal injuries. *See, e.g., Preferred Insurance Co. v. United States,* 222 F.2d 942 (9th Cir.1955), *cert. denied,* 350 U.S. 837, 76 S.Ct. 74, 100 L.Ed. 747 (1955); *United States v. United Services Automobile Ass'n,* 238 F.2d 364 (8th Cir.1956); *Zoula v. United States,* 217 F.2d 81 (5th Cir.1955).

The injuries alleged in the complaint arose out of activity incident to service. Verma was at all pertinent times an Army captain working on biochemical research financed and sponsored by the Army. Although Verma emphasizes that he developed the biologicals at Howard University without any Army assistance, even on his theory the actual conversion of property took place when Colonel Smallridge—Verma's superior officer at Walter Reed—refused to return the property that the Army had placed in his custody after the court-martial proceedings against Verma began. The Colonel took possession of the chemicals not for private use but for the Walter Reed research project. The alleged conversion took place at an Army facility, while Verma was on active duty status in the Army, and for the purposes of an Army project. That is enough.

### III.

Under the precedent that binds us the case should end there. Appellant nonetheless contends that dismissal of *his* claim would serve none of the purposes of the *Feres* doctrine, principally the need to shield military discipline from the corrosion of civilian legal process. The argument proceeds from both authority and reason. The authority is *United States v. Shearer,* 473 U.S. 52, 57, 105 S.Ct. 3039, 3042, 87 L.Ed.2d 38 (1985), in which the Court stated that "[t]he *Feres* doctrine cannot be reduced to a few bright-line rules...." In its setting, however, this admonition refers only to the question whether an injury occurred incident to service. A degree of malleability in that inquiry does not supply a discretionary power to take jurisdiction even if the inquiry has been resolved against the claimant.

As for the argument from reason: the maxim *cessante ratione legis, cessat et ipsa lex* ("the reason of the law ceasing, the law itself also ceases") is a lure to be resisted when the desired effect of a doctrine will fail without rigid application—without the ruleness of a rule of law. Such is true of *Feres:*

> A test for liability that depends on the extent to which particular suits would call into question military discipline and decisionmaking would itself require judicial inquiry into, and hence intrusion upon, military matters. Whether a case implicates those concerns would often be problematic, raising the prospect of compelled depositions and trial testimony by military officers concerning the details of their military commands.... The "incident to service" test, by contrast, provides a line that is relatively clear and that can be discerned with less extensive inquiry into military matters.

*Stanley,* 483 U.S. at 682–83, 107 S.Ct. at 3063. Thus in *Antoine v. United States,* 791 F.Supp. 304 (D.D.C.1991), *aff'd,* 990 F.2d 1377 (D.C.Cir.1993) (mem.), we summarily affirmed the dismissal of a claim that arose incident to service even though the claimant urged the same flexible approach pressed upon us by appellant. Today we set our holding on the record: whether or not the circumstances of a case implicate the rationales for the *Feres* doctrine, the doctrine bars any damage suit against the United States for injuries incurred incident to military service.

### IV.

As the district court correctly held that the appellant's injuries occurred incident to service, the judgment is

*Affirmed.*