James Allen HALL, Individually and as Administrator of the Estates of James Allen Hall, Jr. and William Fredrick Hall, and on Behalf of all Wrongful Death Beneficiaries of James Allen Hall, Jr., and William Fredrick Hall, Deceased; and Tina Marie Johnson, Individually and as Administratrix of the Estates of Michael Shawn Johnston, Robert Patrick Johnston, and Jesse Mark Johnston and on Behalf of all Wrongful Death Beneficiaries of

Michael Shawn Johnston, Robert Patrick Johnston, and Jesse Mark Johnston, Deceased; and as Co–Adiministrator with James Allen Hall, Sr. for the Estates of James Allen Hall, Jr. and William Fredrick Hall Plaintiffs

v.

UNITED STATES of America, Del–Jen, Inc., Lennox Industries, Inc., and John Does 1–50 Defendants

No. CIV. A. 4:99CV123LN.

United States District Court,
S.D. Mississippi,
Eastern Division.

Oct. 31, 2000.

---

Leroy Mashrush, Skiatook, OK, Randall Gill, Tulsa, OK, Thomas R. Frazer, II, Jackson, MS, for Plaintiffs.

Cynthia Lynn Eldridge, Jackson, MS, James C. Brennan, U.S. Department of Justice, Environmental Torts, Civil Div., Washington, DC, William A. Roberts, III, Washington, DC, Edward J. Currie, Jr. and Timothy Dylan Moore, Jackson, MS, James E. Blazek and Ralph H. Wall, New Orleans, LA, Janet McMurtray and Todd Inman Woods and John Simeon Hooks, Jackson, MS, for Defendants.

## MEMORANDUM OPINION AND ORDER

LEE, District Judge.

This cause is before the court on the motion of defendant United States of America to dismiss plaintiff Tina Marie Johnston's claim for the death of Michael Shawn Johnston and its accompanying request for costs. Plaintiff Tina Marie Johnson has responded in opposition to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the Government's motion should be denied.

Tina Marie Johnston claims damages in this action under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346 *et al.* for the death of her husband, Michael Shawn Johnston, a petty officer in the United States Navy who, along with his two children and two step-children, was found dead at the home in which they were housed at the Meridian Naval Air Station. Johnston and the children were determined to have perished as a result of carbon monoxide poisoning which plaintiff alleges resulted from the unsafe and hazardous condition of the old gas appliances in the home of which the Navy was aware but failed to remedy.

The Government submits in its motion that plaintiff's claims are barred by the *Feres* doctrine. Under the *Feres* doctrine, "the Government is not liable ... for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Feres v. United States*, 340 U.S. 135, 146, 71 S.Ct. 153, 159, 95 L.Ed. 152 (1950); *Schoemer v. United States*, 59 F.3d 26, 28 (5th Cir. 1995) (*Feres* doctrine is judicially created exception to FTCA for injuries to servicemen that arise from the course of activity incident to service). "Three rationales support the exception: (1) the 'distinctive-

ly federal' relationship between a serviceman and his superiors; (2) the ability of servicemen to receive no-fault statutory disability and death benefits; and (3) the need to preserve military discipline and prevent judicial second guessing of military decisions." *Schoemer*, 59 F.3d at 28 (citing *United States v. Johnson*, 481 U.S. 681, 688–91, 107 S.Ct. 2063, 2067–69, 95 L.Ed.2d 648 (1987)).

■ The Fifth Circuit considers three factors in determining the applicability of *Feres*: (1) the serviceman's duty status; (2) the site of his injury; and (3) the activity he was performing. *Kelly, Estate of Kelly*, 26 F.3d 597, 600 (5th Cir.1994) (citing *Parker v. United States*, 611 F.2d 1007, 1013 (5th Cir.1980)). "After applying these three factors, the court considers the totality of the circumstances to determine whether the serviceman was acting 'incident to service.'" *Id.* (citing *Parker*).

■ "[T]he serviceman's duty status [is often treated] as the most important factor because it indicates the nature of the nexus between the serviceman and the Government at the time of injury." *Schoemer*, 59 F.3d at 29. In this regard, the government herein places great emphasis on the fact that Johnston was on active duty status at the time of his injury. However, the Fifth Circuit in *Parker* did not consider the fact that the serviceman was on "active duty" to be particularly telling, *see Parker*, 611 F.2d at 1014 n. 10 ("We find the 'active duty' distinction unpersuasive."), and went on to explain that there are "degrees of active service," *id.* at 1013.

If an individual has been discharged from the service, his activities are normally not "incident to service." *See United States v. Brown*, 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954); *Watt v. United States*, 246 F.Supp. 386 (E.D.N.Y.1965). At the other extreme,

one who is on active duty and on duty for the day is acting "incident to service." *See Beaucoudray v. United States*, 490 F.2d 86 (5th Cir.1974). Between these extremes are degrees of active duty status ranging from furlough or leave to mere release from the day's chores. One on furlough or leave, as in *Brooks*, normally has an FTCA action. *But see Uptegrove v. United States*, 600 F.2d 1248 (9th Cir.1979). One with only an unexercised right to a pass or who is only off duty for the day usually is held to be acting "incident to service." *E.g., Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950); *Zoula v. United States*, 217 F.2d 81 (5th Cir.1954) (unexercised right to pass).

*Id.* Subsequently, in *Warner v. United States*, 720 F.2d 837 (5th Cir.1983), the court reiterated the significance of the actual length of time a serviceman is off duty in the analysis of whether his or her activities are to be considered incident to service, noting that in a number of cases, it had found "activities [such as shopping]" to be incident to service "if they occurred during brief off duty periods." *Id.* at 839 (shopping on the base by serviceman off duty for the afternoon held to be "incident to service"); *see also Schoemer*, 59 F.3d at 29 ("We view duty status as a continuum ranging from active duty to discharge."); *Watkins v. United States*, 462 F.Supp. 980, *aff'd*, 587 F.2d 279 (5th Cir.1979) (claim by serviceman fatally injured after leaving Army softball practice while off duty for the evening barred by *Feres* ).

As the court explained in *Schoemer*, "[d]uty status may be dispositive; *Feres* applies to a serviceman who is on active duty and has active status but not to one who has been discharged." *Schoemer*, 59 F.3d at 29. That is not so, however, in cases which do not fall at either end of the spectrum, but somewhere in between.[1]

---

1. The government maintains that this facts of this case are substantially the same as those of *Feres*, in which the decedent, an army lieutenant, while on active duty in the service of the United States, was killed by fire in a barracks in Pine Camp, New York, a military post of the United States in which he had been required to be quartered by superior

*Schoemer,* 59 F.3d at 29. Indeed, in the specific case of a serviceman whose work week was Monday to Friday and who was injured in an accident that occurred when he was off-duty for the weekend, the Fifth Circuit held that "his duty status [fell] along the middle of the spectrum and [was] not a strong indicator of whether he was acting incident to service." *Kelly, Estate of Kelly,* 26 F.3d at 600. Thus, despite the fact that "duty status is usually considered the most important of the three [Parker] factors," *Harvey v. United States,* 884 F.2d 857, 859 (5th Cir.1989), the court turned to the other *Parker* factors to resolve the "incident to service" determination. *See also Schoemer,* 59 F.3d at 28 ("[I]f the serviceman's duty status falls somewhere in the middle of the continuum, then duty status is less important and we look to the other factors.").

In this case, as in *Kelly,* the injury to Johnston occurred on a Sunday, while he was off duty for the weekend.[2] Accordingly, consistent with *Kelly,* his duty status "is not a strong indicator of whether he was acting incident to service." This court, then, must look to other factors.

With respect to whether the location of the injury indicates that the activity is service-oriented, the Fifth Circuit in *Kelly* stated that "[w]hile there is no bright-line rule, *Feres* is more likely to bar recovery when military personnel are injured on base." *Id.* at 597. However, as was expressly recognized in *Parker,* "the occurrence of an on-the-reservation injury ... does not immediately trigger application of *Feres.* If the injury occurred on the base, the Court must proceed to the further inquiry of what function the soldier was performing at the time of the injury in order to ascertain the totality of circumstances." *Parker,* 611 F.2d at 1014; *see also Whitley v. United States,* 170 F.3d 1061, 1072 (11th Cir.1999) ("The location factor does not stand alone and is considered in conjunction with the service member's activity at the time of injury.").

Once it is determined the service members' duty might warrant allowing the action but that the injury occurred on

officers. The complaint alleged negligence on the part of the officers who required the deceased to be quartered in barracks which they knew or should have known to be unsafe due to a defective heating plant and in failing to maintain an adequate fire watch. *Feres,* 340 U.S. 135, 137, 71 S.Ct. 153, 155, 95 L.Ed. 152. It maintains, therefore, that it must be concluded that plaintiff's suit is barred by *Feres.* Plaintiff, on the other hand, insists that this case is "on all fours" with *Elliott v. United States,* 37 F.3d 617 (11th Cir.1994), in which an equally divided Eleventh Circuit affirmed the district court's opinion finding that *Feres* did not bar an FTCA action by an injured serviceman and his wife for debilitating injuries they sustained from carbon monoxide poisoning while at their home on the base at Fort Benning, Georgia. This case bears an obvious resemblance to both *Feres* and *Elliott,* in that in all three cases, active duty servicemen were injured at their housing quarters on base, allegedly because of negligent maintenance by military personnel. However, this case is not "on all fours" with either *Feres* or *Elliott,* for it appears that in *Feres,* the injured serviceman was off duty for the day, while in *Elliott,* the serviceman's injury occurred while he was on a two-week leave. It seems that the dispositive difference in the result

reached in these cases was the servicemen's respective duty status—and Johnston's duty status was not quite the same as that of either Elliott or Feres.

**2.** At least there is a factual dispute as to Johnston's duty status at the time of his death. The Government states in its brief that "Michael Johnston was on active duty at the time of the incident[;] he had returned home and was off duty for the remainder of that day." There is, however, no evidence in the record to support that statement. Plaintiff states in her brief that Johnston was off duty for the weekend, but there appears to be no evidence in the record to support that statement either. The record establishes only that Johnston was found dead on October 25, 1998, which was a Sunday; that he was off duty, i.e., not working, and in fact, was more than likely asleep at the time of the incident. There is no evidence in the record, so far as the court is aware, as to Johnston's actual duty schedule. Assuming that there is a genuine dispute as to the facts of Johnston's actual work status at the time of the incident, rather than a misunderstanding as to the facts, the court resolves that dispute in favor of plaintiff, as the nonmovant.

the base, the court should go further and inquire into precisely what the person was doing when injured.

*Parker,* 611 F.2d at 1014.

In this case, despite the fact that the injury at issue occurred while Johnston was on base, the court ultimately is not persuaded under the "totality of the circumstances" that it occurred incident to his military service. At the time of his injury, Johnston was asleep while off duty for the weekend, a purely personal activity. *See Elliott v. United States,* 877 F.Supp. 1569, 1577 (M.D.Ga.1992) (characterizing watching television in home on base a "purely personal activity").

Based on the foregoing, the court concludes that the Government has failed to establish that *Feres* applies to bar plaintiff's claims. Accordingly, it is ordered that the government's motion for summary judgment is denied.