Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued September 14, 2004      Decided November 23, 2004

No. 03-5270

JEFFREY S. SCHNITZER,
APPELLANT

v.

THOMAS E. WHITE, SECRETARY OF THE ARMY,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 02cv01755)

———

*David P. Sheldon* argued the cause for the appellant.

*R. Craig Lawrence*, Assistant United States Attorney, argued the cause for the appellee. *Kenneth L. Wainstein*,

---

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

United States Attorney, and *Michael J. Ryan* and *Gary Corn*, Assistant United States Attorneys were on brief.

Before: SENTELLE, HENDERSON and TATEL, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Jeffrey Schnitzer appeals the district court's dismissal of his tort claim against the United States. Schnitzer was injured while serving a 29–year sentence at the United States Disciplinary Barracks (USDB), Fort Leavenworth, Kansas, following his court-martial convictions for kidnapping, rape and murder. *See United States v. Schnitzer*, 44 M.J. 380 (C.A.A.F. 1996). The complaint sought damages for the Army's allegedly negligent maintenance of the USDB facility. The district court found the claim barred by the *Feres* doctrine and dismissed for lack of subject-matter jurisdiction. We affirm.

## I. Background

Schnitzer was injured on May 24, 1997 when a portion of a ceiling at the USDB collapsed on him. His injury occurred on a Saturday while Schnitzer was watching television in an inmate common area. Schnitzer alleges that the collapse caused permanent injuries, including headaches, nausea, vision problems, a loss of manual dexterity and chronic pain. At the time he was injured, Schnitzer remained an active duty member of the U.S. Army.

Schnitzer brought a suit for damages in federal district court under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b)(1), 2671 *et seq*. The government defended by asserting the *Feres* doctrine, which prohibits tort claims by members of the military against the U.S. government for injuries suffered "incident to service." *See Feres v. United States*, 340 U.S. 135, 146 (1950). The district court, applying the "incident to service" test set forth in *Verma v. U.S.*, 19 F.3d 646, 648 (D.C. Cir. 1994), found that Schnitzer's injuries occurred incident to his primary military duty of confinement and thus were barred by *Feres*. Schnitzer then timely filed this appeal.

## II. Analysis

A motion to dismiss under the *Feres* doctrine is treated as a motion to dismiss for lack of subject-matter jurisdiction. *See Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996); *Jones v. United States*, 112 F.3d 299, 301 (7th Cir. 1997); *Walden v. Bartlett*, 840 F.2d 771, 772–73 (10th Cir. 1988). In reviewing the grant of a motion to dismiss for lack of subject-matter jurisdiction, we accept the facts alleged by the plaintiff as true; our review of issues of law is *de novo*. *Cummings v. Dep't of Navy*, 279 F.3d 1051, 1053 (D.C. Cir. 2002).

The FTCA effects a broad waiver of sovereign immunity from lawsuits for money damages. The FTCA permits suits "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). This broad language is curtailed by several statutory exceptions, including one that precludes FTCA suits "arising out of the combatant activities of the military . . . during time of war." *Id.* at § 2860(j). The United States Supreme Court carved out an additional exception in *Feres v. United States*, 340 U.S. 135 (1950), holding that "the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Id.* at 146. The Supreme Court reaffirmed this holding as recently as *United States v. Johnson*, 481 U.S. 681, 687–88 (1987).

Lower courts have interpreted the pivotal language of *Feres*, "incident to service," broadly. *See, e.g., Ricks v. Nickels*, 295 F.3d 1124, 1128 (10th Cir. 2002) ("*Practically any suit that implicates the military's judgments and decisions runs the risk of colliding with* Feres." (internal quotation marks omitted; emphasis in original)); *see also Major v. United States*, 835 F.2d 641, 644 (6th Cir. 1987) (*Feres* applies "at a minimum, [to] *all* injuries suffered by military personnel that are even remotely related to the individual's *status* as a member of the military" (emphases in original)).

In determining whether a particular claim is *Feres*-barred, this court applies the three-part "incident to service" test

discussed in *Verma v. United States*, 19 F.3d 646, 648 (D.C. Cir. 1994) (per curiam). We use three factors — the injured service member's duty status, the site of the injury and the nature of the activity engaged in by the service member at the time of his injury — to determine whether a member of the military may bring a claim against the government under the FTCA. *Id.* at 648. Our approach is consistent with that of several other circuits. *See, e.g., Richards v. United States*, 176 F.3d 652, 655 (3rd Cir. 1999); *Speigner v. Alexander*, 248 F.3d 1292, 1298 (11th Cir. 2001); *Kelly v. Panama Canal Comm'n*, 26 F.3d 597, 600 (5th Cir. 1994). None of the three factors is itself dispositive; each contributes to our assessment of the totality of the circumstances in determining whether the injury is properly understood as "incident to service" within the meaning of *Feres*. *See Richards*, 176 F.3d at 655 (employing "totality of the circumstances" approach); *see also Kelly*, 26 F.3d at 600 (same).

Our Circuit has never reached the issue of whether and how the *Feres* doctrine applies to military prisoners. Every circuit to consider the issue, however, has found the doctrine to apply without modification. *See Shaw v. United States*, 448 F.2d 1240 (4th Cir. 1971) (finding "no meaningful distinction" between military prisoners and other service members under *Feres*); *see also Dexheimer v. United States*, 608 F.2d 765 (9th Cir. 1979) (applying *Feres* to military prisoner); *Walden v. Bartlett*, 840 F.2d 771 (10th Cir. 1988) (same). The Tenth Circuit, in which the USDB is located, has resolved several cases involving military prisoners. It has established a rule that "incarceration at the USDB is uniquely part of [a] military relationship such that it is 'incident' to . . . military service as established by *Feres*." *Walden*, 840 F.2d at 774. Accordingly, "being a military prisoner does not preclude a finding that plaintiff's status was that of a military service member, but instead is evidence of such status." *Sargent v. United States*, 897 F. Supp. 524, 525–26 (D. Kan. 1995).

Our sister circuits' precedent, while not binding, is "persuasive authority that should not be completely ignored." *Kreuzer v. Am. Acad. of Periodontology*, 735 F.2d 1479, 1490

n.17 (D.C. Cir. 1984). The uniformity of precedent among the other circuits is significant. In addition, Schnitzer himself does not contest the general relevance of the *Feres* doctrine to military prisoners but instead alleges that the district court misapplied the *Verma* test in dismissing his case. Discerning no reason that military prisoners should not be subject to the same legal standards as non-incarcerated personnel, we adopt the approach of our sister circuits and apply the *Verma* test without modification to military prisoners.

The first two elements of the *Verma* test are not in dispute. First, Schnitzer conceded below that he was on active duty status at the time his injury occurred. Second, his injury occurred within a military facility. Each of these facts supports a finding that Schnitzer's injury was incident to his military service. Thus, the viability of Schnitzer's claim depends entirely upon *Verma*'s third prong — the nature of his activity at the time of his injury.

Schnitzer argues that, regardless of the Army regulations, his activity of watching television was purely personal, analogous to the personal activities of non-incarcerated military personnel. We are unpersuaded by this argument. First, a service member determined to be engaged in personal activity under *Feres* is ordinarily off-duty.[1] *See, e.g., Ordahl v. United States*, 601 F. Supp. 96, 100 (D. Mont. 1985) (claim of

---

[1] In one of the cases Schnitzer relies on, *Hall v. United States*, 130 F. Supp.2d 825 (D. Miss 2000), the injured service member was asleep at the time of his injury — a circumstance in which even a military prisoner is deemed to be off-duty. *See* Army Regulation (AR) 190–47 § 12–2. And even when a soldier was off-duty when injured, *Feres* has barred recovery if the injury occurred during military-sponsored leisure activities. *See, e.g., Costo v. United States*, 248 F.3d 863 (9th Cir. 2001) (claim barred for wrongful death resulting from Navy-sponsored recreational whitewater rafting trip); *Bon v. United States*, 802 F.2d 1092 (9th Cir. 1986) (claim barred for injuries from boating accident involving motorboats rented from Navy-run recreation center); *Hass ex rel. U.S. v. United States*, 518 F.2d 1138 (4th Cir. 1975) (claim barred for injury sustained while riding horse rented from Marine Corps stable);

plaintiff socializing in his on-base apartment injured by fellow airman while "off-duty" not barred by *Feres*); *Johnson v. United States*, 704 F.2d 1431, 1439–40 (9th Cir. 1983) (claim of "off-duty" plaintiff "not under military control" not barred by *Feres*); *cf. Hodge v. Dalton*, 107 F.3d 705, 711 (9th Cir. 1997) (claim barred because plaintiff "subject to direct military control and discipline"). A military prisoner, however, is always subject to direct control and is on-duty except in extremely limited circumstances. Under Army Regulation (AR) 190–47 § 12–2 (Aug. 15, 1996), "[a] prisoner is considered in an on-duty status except for periods of mandatory sleep and meals, and during reasonable periods of voluntary religious observations." Thus, Schnitzer was on-duty while he was watching television. Second, his assertion that recreational activity furthers no military purpose is belied by AR 190–47 § 5–9 which includes a military prisoner's recreational and leisure time as part of the Army's plan to enhance his welfare.[2] Recreational activity serves the military purpose of assisting "to develop productive attitudes and enhanced living skills among post-trial prisoners." *Id.* at § 5–1.

Schnitzer further argues that the district court conflated the duty status inquiry with the "activity" prong of the *Verma* test. As other courts have held, the proper inquiry regarding duty status is whether a service member is on active duty status or is discharged or furloughed. *See, e.g., Persons v. United States*, 925 F.2d 292, 296 n.6 (9th Cir. 1991) ("The relevant distinction . . . runs between servicepersons who are

---

*Chambers v. United States*, 357 F.2d 224 (8th Cir. 1966) (claim for wrongful death involving on-base swimming pool barred).

[2] AR 190–47 § 5–9, entitled "Prisoner welfare activities," provides in pertinent part: (a) "Well planned recreation and welfare programs will be provided within ACS facilities;" and (d) "Recreational programs and activities will be established which are sufficiently diversified to attract maximum participation. The prisoner's schedule will be considered to avoid unnecessary conflict with work, training, and education activities. The prisoner recreation program may include sporting events, hobby shops, radio, television, indoor games, motion pictures, video cassettes, creative writing, painting, and other appropriate activities."

on 'active duty' and those who have been discharged or are on furlough, not between 'off-duty' and 'on-duty' servicepersons."); *Skees v. United States*, 107 F.3d 421, 424 (6th Cir. 1997) (same); *see also Pierce v. United States*, 813 F.2d 349, 353 (11th Cir. 1987) (distinguishing between active duty and furlough but noting that, under certain circumstances, "pass" granting discretionary time off "akin" to furlough for duty status inquiry). *But see Dreier v. United States*, 106 F.3d 844, 853 n.8 (9th Cir. 1996) (referring to passage in *Persons*, *supra*, as dictum but noting that off-duty status remains relevant to *Feres* inquiry as a whole); *Parker v. United States*, 611 F.2d 1007, 1012 (5th Cir. 1980) (treating duty status inquiry as spectrum between active, on-duty status on one end to discharged status on other). Whether an active duty service member is on- or off-duty when injured is not relevant to the "duty status" inquiry. Instead, it is more properly considered under the activity prong of *Verma*: "on-duty" status increases the likelihood that an active duty soldier's activity is incident to his military duties.

It is not clear whether the district court maintained the distinction between duty status under the first prong of *Verma* and on- versus off-duty status under *Verma*'s third prong. It noted that Schnitzer conceded the first two prongs of the *Verma* test, adding that Schnitzer "was on *active duty* status at the time of the injury, and the injury took place at USDB, a military facility." Dist. Ct. Mem. Op. 8/11/2003 at 7 (emphasis added). The district court, however, then cited to AR 190–47 § 12–2, which involves a prisoner's *on-* or *off-duty* status, not his *active* duty status.[3] *Id.* Nevertheless, any confusion created by the district court's citation is without effect in view of Schnitzer's concession. Moreover, the trial court's conclusion as to Schnitzer's duty status is correct without regard to Schnitzer's concession: it is undisputed that Schnitzer was on active duty status at the time of his injury.[4]

---

[3] See discussion of AR 190–47 § 12–2(a), *supra*, at 6.

[4] The Tenth Circuit has held that *Feres* applies even when the prisoner has been discharged from active duty. As that circuit

Schnitzer further argues that AR 190–47 § 12–2 relates only to the duty status inquiry and therefore should not be used to determine the nature of the activity he was engaged in when injured. This is incorrect. As discussed above, § 12–2 controls on- and off-duty status, which *is* relevant to the activity inquiry. Moreover, the district court's conclusion is supported by other provisions of AR 190–47. Section 5–2 of AR 190–47 requires that a military prisoner's on-duty routine include "useful employment supplemented by . . . welfare activities," as well as other supplemental programs.[5] Section 5–9(d) expressly provides that television is included among the "welfare activities."[6] Some of the supplemental activities are mandatory while others are voluntary.[7] A prisoner has some choice about which of the supplemental activities he participates in but participation of some sort remains part of a prisoner's military duties. Thus, the dis-

---

noted in *Ricks v. Nickels*, 295 F.3d 1124 (10th Cir. 2002), a "complete discharge . . . does not automatically transform a service-member into a civilian for purposes of *Feres* analysis. The paramount inquiry is whether the alleged constitutional violations are incident to the plaintiff's military service." *Id.* at 1131.

[5] AR 190–47 § 5–2 provides:

> All prisoners, unless precluded because of disciplinary, medical, or other reason determined appropriate by the facility commander, will engage in useful employment supplemented by appropriate supervision, mental health programs, professional evaluation, education, training and welfare activities. However, activities established and resources allocated are not to be less arduous or more generous than for military personnel not incarcerated.

[6] *See* AR 190–47 § 5–9(d) (television included in "welfare activities").

[7] *Cf.* AR 190–47 § 5–5(b): "All physically qualified prisoners . . . will participate in supervised recreational and physical training activities for a minimum of 5 hours per week;" AR 190–47 § 5–8: "All prisoners without a high school education . . . will be afforded the opportunity to complete the General Equivalency Diploma (GED) Program."

trict court made proper use of AR 190–47 § 12–2 in deciding that Schnitzer's injury while watching television was incurred during an activity incident to military service.

That a broader range of activities is incident to a prisoner's military service under *Feres* than for a non-incarcerated service member is neither surprising nor problematic. Upon conviction, a military prisoner loses a host of freedoms enjoyed by non-incarcerated personnel and is subject to constant regulation of his activities. Most activities engaged in by prisoners are deemed to serve either discipline or rehabilitation purposes. A prisoner's leisure activities are considered beneficial to the overall program of incarceration.[8]

Schnitzer also asserts that, regardless whether his injury was "incident to service" under *Feres*, the district court, in creating a class of service members (military prisoners) who are unable to recover under the FTCA, ran afoul of the equal protection component of the due process clause of the Fifth Amendment. His argument fails for two reasons. First, he is plainly wrong that the district court in effect banned any FTCA claim by a military prisoner. As the district court noted, under AR 190–47 a military prisoner is considered off-duty during mandatory periods of eating and sleeping as well as during periods of voluntary religious observance. *Id.* at § 12–2. While these exceptions are admittedly narrow, they derive from the difference between a prisoner's military duties as compared with those of a non-incarcerated service member and therefore do not deny the prisoner equal protection.

Second, Schnitzer's argument is more properly directed to a reconsideration of the *Feres* doctrine itself, not to the doctrine's applicability to his case. He notes that the legislative history of the FTCA may not support the Supreme Court's holding in *Feres*, *see Rayonier, Inc. v. United States*,

---

[8] *Cf.* AR 190–47 § 5–1 ("The ACS [Army Corrections System] provides the environment, opportunities, and assistance to develop productive attitudes and enhanced living skills among post-trial prisoners…"), *with* AR 190–47 § 5–2 *and* AR 190–47 § 5–9 (describing prisoner's activities to include welfare activities).

352 U.S. 315, 320 (1957) (declaring, in non-*Feres* case, "There is no justification for this Court to read exemptions into the [FTCA] beyond those provided by Congress. If the Act is to be altered that is a function for the same body that adopted it."); that the various rationales used to justify *Feres* do not withstand scrutiny in light of the inconsistent results produced, *see Johnson v. United States*, 481 U.S. 681, 692–703 (1987) (Scalia, J., dissenting); and that academic commentary critical of *Feres* is widespread, *see, e.g.,* Jonathan Turley, *Pax Militaris: The* Feres *Doctrine and the Retention of Sovereign Immunity in the Military System of Governance*, 71 Geo. Wash. L. Rev. 1 (2003). Irrespective of their merits, none speaks to the equal protection claim made here.

For the foregoing reasons, the judgment of the district court is affirmed.

*So ordered.*