[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-11506
Non-Argument Calendar

_____

D.C. Docket No. 4:11-cv-10078-KMM

LINDA LANUS, as personal representative
of the Estate of Eric K. Lanus,

Plaintiff-Appellant,

versus

UNITED STATES OF AMERICA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____
(October 12, 2012)

Before BARKETT, PRYOR and COX, Circuit Judges.

PER CURIAM:

This case considers whether a deceased serviceman's wrongful death claim

against the United States, brought through a personal representative, can survive a

motion to dismiss for lack of subject matter jurisdiction under the *Feres* doctrine. The district court determined that *Feres* barred the court's jurisdiction to hear the case. Accordingly, the court granted the United States' motion to dismiss. Because we cannot meaningfully distinguish this case from the facts considered by the Supreme Court in *Feres*, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

U.S. Coast Guard Fireman's Apprentice Eric K. Lanus returned to his assigned housing at Naval Air Station Key West in the early morning hours of February 8, 2009, a Sunday, after spending the previous evening in Key West. He turned on the stove in the kitchen, apparently preparing to cook, and went to his bedroom in the apartment's upper floor. Around 5 a.m., heat from the forgotten stove ignited a fire that eventually engulfed the ground floor of the apartment. The fire department extinguished the fire an hour later. Serviceman Lanus was found dead in his bedroom.

When he died, Serviceman Lanus had been "on liberty." Liberty status refers to short time periods, often including weekends, when active-duty personnel are not on authorized leave from duties but are outside normal working hours. While on liberty, crew members may depart from their units and move about as they please

2

until they must return to duty. Serviceman Lanus was scheduled to report for duty that Monday.

His mother, Linda Lanus, brought an action on her son's behalf for wrongful death against the United States acting through the Department of Defense, the Department of Homeland Security, the U.S. Navy, and the U.S. Coast Guard, which could include her son's superior officers. She claimed that a number of safety deficiencies in the apartment had allowed the fire to spread unnoticed, and she attributed these safety deficiencies to negligent upkeep of the premises by the United States and its failure to warn him of the apartment's conditions. She brought her claim under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2674.

The United States responded with a motion to dismiss for lack of subject matter jurisdiction under the *Feres* doctrine, which removes district courts' jurisdiction for a serviceman's injuries that "arise out of or are in the course of activity incident to service," *Feres v. United States*, 340 U.S. 135, 146, 71 S. Ct. 153, 159 (1950).

The district court concluded that the *Feres* doctrine controlled and granted the United States' motion. Ms. Lanus appeals. We affirm.

## II. ISSUE ON APPEAL AND STANDARD OF REVIEW

Ms. Lanus contends that the district court erred by determining that her son's death occurred "incident to" his military service. Thus, whether Serviceman Lanus's

death was incident to his service under the *Feres* doctrine is the issue before us. Because the determination involves an application of law to undisputed facts, we consider this issue de novo. *See Whitley v. United States*, 170 F.3d 1061, 1068 (11th Cir. 1999).[1]

## III. DISCUSSION

The doctrine of sovereign immunity bars suit against the United States unless the United States expressly consents. *United States v. Mitchell*, 463 U.S. 206, 212, 103 S. Ct. 2961, 2965 (1983). The FTCA represents the United States' consent to tort liability "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. This consent does not extend, however, to claims "arising out of the combatant activities of the military or naval forces, or the Coast Guard, during time of war." 28 U.S.C. § 2680(j).

In *Feres*, the Supreme Court took this exception a step further and prohibited suits under the FTCA "for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service," regardless of whether the United States

---

[1] A party may attack the district court's subject matter jurisdiction by challenging the sufficiency of the complaint (a facial attack) or by challenging the facts themselves (a factual attack). In a facial attack, the district court takes as true the complaint's factual allegations. *McMaster v. United States*, 177 F.3d 936, 940 (11th Cir. 1999). Here, the court found that it lacked subject matter jurisdiction even assuming as true all of Ms. Lanus's factual allegations. We therefore do the same and assume all facts in the complaint are true. Only a disputed application of the *Feres* doctrine to those facts is left for our review.

is at war. 340 U.S. at 146, 71 S. Ct. at 159. The *Feres* Court considered the case of a serviceman on active duty who died while sleeping. He died after a defect in his assigned on-base housing's heating system ignited a fire and the housing's emergency alarm system failed to operate. *Id.* at 137, 71 S. Ct. at 155. The Court determined that the serviceman's active-duty status and on-base location rendered the injury sufficiently "incident to service" and affirmed the dismissal of the case. *Id.* at 146, 71 S. Ct. at 159.

As one might imagine, the United States aligns the present case with *Feres* by highlighting the similarities. Both men were outside their normal working hours but still on active duty when they died. Both men lived in assigned housing on their respective military bases. Both men died while sleeping due to a fire allegedly caused by the negligence of the United States in maintaining the premises. These facts led the *Feres* Court to conclude that the serviceman's injury was incident to his service, thus barring suit.

Ms. Lanus proposes two distinctions. First, she emphasizes that her son was "on liberty" when he died. Second, she declares that the housing to which her son was assigned was not solely military housing but instead "from time to time" hosted "non-military government employees[] and civilian contractors and agents." (R.1-1

5

at ¶ 13.)  These two points, she says, command a different outcome than *Feres*.  We disagree.[2]

Ms. Lanus first argues that her son enjoyed a different duty status (liberty) at the time of his death than the serviceman in *Feres*.  While on liberty, her son had "far less restriction than merely being released from the day's chores" and he did not intend "to return to duty for over 24 hours at the time of his death."  (Appellant Br. at 14.)  She further asserts that her son was not restricted in his ability to travel and "was not required to report to any supervisors during the period of his liberty."  *Id.* These characteristics of liberty status, she claims, render it "the functional equivalent of being on a furlough or a pass," *id.*, and courts have decided that injuries sustained while on furlough, leave, or pass are not incident to service under the *Feres* doctrine. *See, e.g.*, *Brooks v. United States*, 337 U.S. 49, 69 S. Ct. 918 (1949) (holding that a serviceman injured while on a requested and authorized furlough could bring suit under the FTCA); *Pierce v. United States*, 813 F.2d 349 (11th Cir. 1987) (holding that a serviceman injured while on a requested and authorized "pass" akin to a furlough or leave could bring suit under the FTCA).

---

[2] Ms. Lanus attempts to rely on a three-factor test our court has developed to evaluate potential *Feres* applications to situations falling between the facts in *Feres*, barring the claim, and those in cases in which the Supreme Court has come to an opposite conclusion, allowing the claim to proceed.  (*See* Appellant Br. at 12-13 (citing *Whitley*, 170 F.3d at 1070).)  Because we conclude that the facts of this case are sufficiently similar to *Feres*, we find no need to use the test to evaluate whether the *Feres* doctrine bars Ms. Lanus's claim.

This characterization of Serviceman Lanus's status, however, does not materially distinguish *Feres*. Liberty status includes nights and weekends "off" in the sense that the serviceman, though on active duty, is simply not required to perform duties at that time.[3]  Though *Feres* does not go into detail, the decedent's status in *Feres* (on active duty and sleeping between on-duty shifts) is functionally similar to the active-duty liberty status attributed to Serviceman Lanus.  That Serviceman Lanus was enjoying a weekend on liberty rather than a single night does not distinguish the case.

Ms. Lanus's second proposed distinction refers to her son's assigned housing. She argues that injuries in on-base locations accessible to civilians, such as her son's housing unit, support a finding that the injury did not occur incident to service.

That Serviceman Lanus's on-base housing occasionally provided a roof for civilian government employees, however, also fails to differentiate the case from *Feres*.  The *Feres* Court made no mention of whether the decedent's barracks also housed civilians from time to time, and the relevance of the distinction remains unclear.  Case law supporting Ms. Lanus's position is scant.[4]

---

[3] As the Ninth Circuit has put it, liberty status "refers generally to the time between the end of normal working hours on one day, and the beginning of normal working hours on the next." *Costo v. United States*, 248 F.3d 863, 864 n.1 (9th Cir. 2001).

[4] Ms. Lanus cited three cases in support of the idea that injuries sustained in on-base locations may be distinguishable from the injury in *Feres* due to the fact that civilians also could

As we see no meaningful distinction between the facts before us and the facts before the *Feres* Court, we affirm the district court's order.

## IV. CONCLUSION

The facts of this case are substantively similar to the facts in *Feres*, and we therefore affirm the district court's dismissal for lack of jurisdiction.

AFFIRMED.

---

access the location.  Two of the cases are district court cases from outside our circuit and do not support her point. *See Hall v. United States*, 130 F. Supp. 2d 825, 829 (S.D. Miss. 2000); *Ordahl v. United States*, 601 F. Supp. 96, 100 (D. Mont. 1985).

Ms. Lanus's third case is a district court opinion affirmed by an equally divided court sitting *en banc*.  *See Elliot* ex rel. *Elliott v. United States*, 877 F. Supp. 1569 (M.D. Ga. 1992), *aff'd by an equally divided court*, 37 F.3d 617 (11th Cir. 1994) (en banc).  Though this case is not binding precedent, *see United States v. Cerceda*, 172 F.3d 806, 812 n.6 (11th Cir. 1999) (en banc), it deserves note due to its apparent similarity to this case. In *Elliot*, a serviceman and his wife sustained injuries when their on-base assigned housing at Fort Benning,  Georgia developed a carbon monoxide leak. 877 F. Supp. at 1572.  In their negligence suit against the United States, the district court rejected the contention that *Feres* barred the serviceman's claim, determining that, though the injury occurred in his assigned on-base living quarters, he had been engaged in a purely personal activity (watching television) and—most importantly—had been on requested and authorized leave rather than on active duty.  *Id.* at 1575-77.  Liberty, however, is not furlough, leave, or pass, and it is not a requested or authorized reprieve from active duty—indeed, it is not a reprieve from active duty at all.  Serviceman Lanus was on active duty at the time of his death, a critical distinction from *Elliott*.  *See Jiminez v. United States*, 158 F.3d 1228, 1229 (11th Cir. 1998) (recognizing that "the serviceman's duty status [i]s the most important criterion in determining whether an injury was incident to military service" (citing *Parker v. United States*, 611 F.2d 1007 (5th Cir. 1980))).

8